**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Angel Luis Rodriguez, Jr.<br>*individually and on behalf of all others similarly situated,*<br><br>Plaintiff,<br><br>-v-<br><br>Dealertrack Systems, Inc.,<br><br>Defendant. | 2:24-cv-05084<br>(NJC) (AYS) |

**OPINION AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Plaintiff Angel Luis Rodriguez Jr. brings claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 et seq. (the "FCRA"), and the New York Fair Credit Reporting Act, N.Y. Gen. Bus. Law §§ 380 et seq. ("NY FCRA") against Defendant Dealertrack Systems, Inc. ("Dealertrack"), a reporting agency that sells consumer data to assist car dealerships in assessing potential buyers, for damages, injunctive relief, declaratory relief, attorney's fees, and costs. (Compl. ¶¶ 1, e, f, ECF No. 1.) The Complaint brings four federal claims against Dealertrack, one of which is brought on behalf of a putative Class. First, it alleges that Dealertrack failed "to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer reports it furnished" about Rodriguez and members of the putative Class in violation of the FCRA, 15 U.S.C. § 1681e(b) ("Section 1681e(b)"), which are known as "reasonable procedures" claims. (*Id.* ¶ 96.) Second, it alleges that Dealertrack failed to disclose Rodriguez's file upon his request in violation of the FCRA, 15 U.S.C. § 1681g(a) ("Section 1681(g)(a)"). (*Id.* ¶¶ 11, 101.) Third, the Complaint alleges that Dealertrack failed

to conduct a reasonable reinvestigation of its records relating to Rodriguez to identify and correct any inaccurate and misleading information in violation of the FCRA, 15 U.S.C. § 1681i ("Section 1681i"). (*Id.* ¶ 106.) Fourth, it alleges that Dealertrack failed to provide written notice to Rodriguez of the results of any reinvestigation within five business days as required under the FCRA, 15 U.S.C. § 1681i(a)(6)(A). (*Id.* ¶¶ 13, 111.) Finally, the Complaint also brings state law claims under the NY FRCA that are analogous to the first three federal claims: (1) reasonable procedures claims on behalf of Rodriguez and members of the putative class under N.Y. Gen. Bus. L. § 380-j(e) ("Section 380-j(e)"); (2) a failure-to-disclose claim under N.Y. Gen. Bus. L. § 380-d ("Section 380-d"); and (3) a reinvestigation claim under N.Y. Gen. Bus. L. § 380-f ("Section 380-f"). (*Id.* ¶¶ 116, 122, 127.)

Before this Court is Dealertrack's Motion to Dismiss the Complaint for lack of standing under Rules 12(h)(3) and 12(c) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), and Rodriguez's opposition. (Def.'s Mem. Supp. Mot. Dismiss ("Def.'s MTD Mem."), ECF No. 49; Mem. Opp'n ("Opp'n"), ECF No. 50.) Dealertrack initially raised its arguments for dismissal in a letter seeking a pre-motion conference, which Rodriguez opposed. (Def.'s Ltr. Mot., ECF No. 39 at 1; Resp. Ltr., ECF No. 44.) This Court heard argument on September 2, 2025, and permitted the parties to provide supplemental briefing. (Elec. Order, September 2, 2025.) Thus, the parties have provided multiple submissions concerning Dealertrack's arguments for dismissal for lack of standing. (Def.'s Ltr. Mot.; Resp. Ltr.; Def.'s MTD Mem.; Opp'n.)

For the reasons explained below, Rodriguez has standing under Article III of the U.S. Constitution to pursue many, but not all of the claims pled in the Complaint. First, he has standing to pursue reasonable procedures claims for damages under the FCRA and the NY FCRA on behalf of himself and members of the putative Class. Second, he has standing to

pursue injunctive relief on behalf of himself with respect to his reasonable procedures claims under the NY FCRA, although he lacks standing to pursue such injunctive relief claims on behalf of members of the putative Class. Third, although Rodriguez has standing to pursue damages on his own behalf with respect to his failure-to-disclose and reinvestigation claims under the FCRA and the NY FCRA, he has failed to show any ongoing or future harm as required to pursue injunctive relief on the NY FCRA claims. Fourth, Rodriguez does not have standing to bring an FCRA claim against Dealertrack for failure to provide written notice of reinvestigation because the Complaint fails to allege any injuries stemming from such failure. Fifth, the requests for declaratory relief set forth in the Complaint are dismissed for lack of standing because the backward-looking relief requested would not redress Rodriguez's substantial risk of future harm from Dealertrack's failure to take reasonable measures to ensure maximum possible accuracy in his OFAC screening reports. Accordingly, Dealertrack's Motion to Dismiss is denied in part and granted in part.

**JURISDICTION**

This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 over Rodriguez's FCRA claims brought pursuant to 15 U.S.C. §§ 1681e(b), 1681g(a), 1681li, and 1681i(a)(6)(A). It exercises supplemental jurisdiction over the NY FCRA claims under 28 U.S.C. § 1367(a) because these state law claims are part of the same case or controversy and arise out of the same common nucleus of operative facts as the federal claims. Because there is supplemental jurisdiction over the state law claims, I need not address whether there is also jurisdiction over these claims under the Class Action Fairness Act, 28 U.S.C. § 1332(d).

As noted, however, Dealertrack challenges Rodriguez's standing under Article III of the U.S. Constitution, which constitutes an attack on subject matter jurisdiction. *See Bohnak v.*

*Marsh & McLennan Cos., Inc.*, 79 F.4th 276, 283 (2d Cir. 2023) ("If [a] plaintiff lack[s] Article III standing, a court has no subject matter jurisdiction to hear their claim.").[1]

## BACKGROUND

### I. Factual Background

A. Rodriguez's Application to Purchase the Mustang from Parkway Ford

Rodriguez was born in Ohio and continues to reside there. (Pl.'s Rule 56.1 Counterstatement of Material Facts ("Pl.'s CSMF") ¶¶ 116–118, ECF No. 45; Compl. ¶ 21.) For more than one year, he contacted five different car dealerships in search of his "dream car"—a Ford Mustang Shelby GT 500, which he described as "the rock star of all cars" ("Mustang"). (Pl.'s CSMF ¶ 125; Rodriguez Dep. 34:9–20, 36:6–10, ECF No. 46-3.) On October 14, 2022, Rodriguez found a special Mustang, manufactured with more horsepower than standard versions and other unique features, at Parkway Ford, a car dealership in Dover, Ohio. (Pl.'s CSMF ¶ 133; Cihon Dep., 57:11–58:7, ECF No. 46-1; Rodriguez Dep. 36:6–10.) Rodriguez saw the Mustang on the Parkway website at 8:30 p.m. and immediately called Parkway Ford to ask about the car. (Rodriguez Dep. 36:6–10.) Ryan Shear, a Parkway Ford salesperson, answered Rodriguez's call. (*Id.* 36:13–16.)

Rodriguez was so excited that he "did not sleep that night at all, called [Shear] the next morning" and said, "It's a go. Let's figure it out." (Rodriguez Dep. 43:11–13.) Because the Mustang was a "high ticket" item, Shear requested information from Rodriguez to establish that he could purchase the vehicle, including a photo of his driver's license. (Shear Decl. ¶¶ 11, 12,

[1] Unless otherwise indicated, case quotations omit all internal quotation marks, brackets alterations, and citations.

ECF No. 41-1.) Shear then contacted Ronald Cihon, Parkway Ford's Finance Manager. (*Id.* ¶ 13.)

B. Parkway Ford's Initial Search for Rodriguez Using the National Crime Center's RouteOne Software

Parkway Ford required Cihon to use software provided by RouteOne LLC ("RouteOne") to submit vehicle loan applications. (Cihon Decl. ¶ 7, ECF No. 41-3.) When a customer is interested in financing a vehicle, Cihon inputs their information into RouteOne, which performs a credit check and searches the Specially Designated Nationals and Blocked Persons ("SDN") list of the U.S. Department of the Treasury Office of Foreign Assets Control ("OFAC"). (*Id.* ¶¶ 8–9.)

On October 22, 2022, Cihon used RouteOne's software to search for Rodriguez's name on the OFAC SDN list. (*Id.* ¶ 13.) The search yielded a screenshot where "an OFAC issue was portrayed as a red 'X' beside the OFAC verification section" along with the word "Fail." (*Id.*; Ex. A at DT 00083, 00102.) Cihon told Shear that "RouteOne returned an OFAC report regarding Mr. Rodriguez that indicated a 'fail.'" (Cihon Decl. ¶ 14; Shear Decl. ¶ 15.) Shear informed Mr. Rodriguez about the Oct. 22 OFAC Report results. (Shear Decl. ¶ 16.) Shear also explained to Rodriguez that this issue needed to be resolved before he could purchase the car. (*Id.*)

Cihon was unsure what to do about the fact that Rodriguez had failed a search of the OFAC SDN list using RouteOne. (Cihon Decl. ¶ 16.) Cihon could not identify a mechanism through RouteOne to resolve the OFAC screening failure. (*Id.* ¶ 17.)

C. Cihon Decides to use Dealertrack's F&I Software

Sometime on or before October 25, 2022, Cihon reached out to Michael Smith, the finance manager at Parkway Honda, a different branch of the Parkway Auto Group. (*Id.* ¶ 16.)

After conferring with Smith, Cihon decided he "should try to clear the Oct. 22 OFAC Report using Dealertrack's Finance & Insurance" ("F&I") software by using Smith's Dealertrack account. (*Id.* ¶ 18.) Cihon sought to use a different software than the Route One program that he had already tried. (*Id.* ¶¶ 18, 21.)

D. Dealertrack Publishes OFAC Reports Regarding Rodriguez to Cihon

On October 25, 2022, Cihon used Smith's Dealertrack F&I account to "redo" the search of the OFAC SDN list for Rodriguez that he had conducted on October 22, 2022 through Route One. (Cihon Decl. ¶ 21, 14; Cihon Dep. 20:12–21:7.) At 11:11 a.m. in response to Cihon's search, Dealertrack published a report on the "Compliance Overview" screen of its software stating that: (1) "the person in question may be a match to OFAC's SDN list"; (2) there was a "Match Found" due to a "First Name Match" and "Last Name Match"; (3) the match was to a "Specially Designated Foreign Narcotics Trafficker" named Angel Rodriguez with a birthdate of March 25, 1970, located in Guadalajara, Mexico, and (4) therefore, Rodriguez's "OFAC Status" was "**Failed** Match found on OFAC." (Cihon Decl. ¶ 21; Ex. A at DT 00100.) The search results appeared on Cihon's computer screen as shown in the images below ("11:11 a.m. Dealertrack report").

10/25/22, 11:11 AM Compliance - Dealertrack

Dealertrack F&I

Parkway Honda MS

Switch to Dealertrack Classic Switch Dealership DMS RegUSA Support

Search

History Notes Manage

Summary
Bureau Complete

ID Verification

Credit Bureau

Application

Credit Decisions

Contract

Aftermarket

Salesmaker

Compliance

Documents

Angel Rodriguez Jr Edit [redacted]

Home: [redacted]

Co-Applicant: (None) Add

Application: Copy and Create New

(No Vehicle Selected) Add

Condition: Mileage:

Transmission: - Stock #: -

VIN: -

Deal

Payment: - Amount: -

Rate: -

Term: -

Compliance

**OFAC**

×

The person in question may be a match to OFAC's SDN list for the following reasons(s):

**Match Found**

- Last name match
- First name match

**More Info**

- Issue Source - Specially Designated Foreign Narcotics Trafficker
- Issue ID - 12784
- Comment - O DOB 25MAR1970
- Source First Name - ANGEL
- Source Last Name - RODRIGUEZ
- Source City - GUADALAJARA
- Source State - JA
- Source Zip Code - 00237

**If there are any matches against OFAC's SDN (Specially Designated Nationals) list, please contact the OFAC Hotline at 1-800-540-6322 or visit the OFAC FAQs: Sanctions Compliance Information page at the U.S.**

OFAC

Status

✕ Failed Match found on OFAC More info

Run OFAC Again

Out of Wallet

Give Feedback

OFAC ×

The person in question may be a match to OFAC's SDN list for the following reasons(s):

Match Found

- Last name match
- First name match

More Info

- Issue Source - Specially Designated Foreign Narcotics Trafficker
- Issue ID - 12784
- Comment - O DOB 25MAR1970
- Source First Name - ANGEL
- Source Last Name - RODRIGUEZ
- Source City - GUADALAJARA
- Source State - JA
- Source Zip Code - 00237

**If there are any matches against OFAC's SDN (Specially Designated Nationals) list, please contact the OFAC Hotline at 1-800-540-6322 or visit the OFAC FAQs: Sanctions Compliance information page at the U.S.**

(Ex. at A, DT 00100–101.) The 11:11 a.m. Dealertrack report also includes, among other things, a depiction of an "X" next to the phrase "**Failed** Match found on OFAC." (*Id.*) At 11:52 a.m., Rodrogiuez and Cihon spoke on the phone for about five minutes, according to call logs. (Cihon Decl. ¶ 4, Ex. B at DT 00113, ECF No. 41-3.)

E. Cihon's Attempts to use Dealertrack's "Out of Wallet" Questions

Cihon testified that he was trained that it is "important and necessary to make sure that we're not delivering cars to someone who is on the OFAC sanctions list." (Cihon Dep. 17:9–18.) He understood that "it's illegal to do any kind of business transaction with someone who's on the OFAC list" because the list contained "terrorists . . . drug dealers, drug traffickers, things like that, that . . . you don't want to be associated with . . . ." (*Id.* 18:5–13.)

According to Cihon, Smith had told him that Dealertrack's F&I software provided "Out of Wallet" questions that staff could use to "clear the consumer" or verify their identity. (Cihon Dep. 87:18–21.) However, Dealertrack's User Guide indicates that there are two distinct results

that appear on the "Compliance Overview" after running a search for a name: a "Red Flag" and an "OFAC" result. (Ex. J at DT 00134.) The User Guide states that an OFAC failure cannot be cleared as follows:

> If a customer fails OFAC, *it cannot be cleared* because the customer is on OFAC's SDN (Specially Designated Nationals) list. It is required by law that you check your customers against OFAC's SDN list. *Dealertrack cannot clear a customer who fails OFAC.*

(*Id.* at DT 00133 (emphasis added).) By contrast, the User Guide explains that a user can clear a "Red Flag Alert" by using Dealertrack's "Out of Wallet" verification questions. (*Id.* at DT 00134–5.) "Out of Wallet Questions should always be run when a customer's Red Flag Status is **Failed**." (*Id.* at DT 00138 (emphasis in original).)

After receiving the 11:11 a.m. Dealertrack report, Cihon called Rodriguez at around 12:33 p.m. for six minutes and asked him four "Out of Wallet" questions. (Cihon Decl. ¶¶ 26, 27; Ex. B at DT 00113.) Cihon testified that Rodriguez correctly answered these questions at around 12:37 p.m. (Cihon Dep. 97:19–98:1.) Cihon input the responses into Dealertrack's software. (Cihon Decl. ¶¶ 26, 27.)

F. <u>Cihon's Continued OFAC Searches Using Dealertrack's F&I</u>

Cihon "was able to verify that [Rodriguez] was not presenting a fake ID" and had not "stolen another person's identity" because Rodriguez correctly answered the "Out of Wallet" questions at 12:37 p.m. (*Id.* ¶ 28.) Nevertheless, Cihon ran additional searches of the OFAC SDN list through Dealertrack and the Treasury Department for Rodriguez's name. (*See* Ex. BB at DT 00040, ECF No. 46-8; Ex. DD at DT 00041, ECF No. 46-9; Ex. EE at DT 00042, ECF No. 46-10; Ex. C at DT 00094.) Just minutes after Rodriguez answered the "Out of Wallet" questions, at 12:41 p.m., Cihon conducted another Dealertrack search for Rodriguez, which yielded an "OFAC Verification Results" page indicating that Rodriguez's "Status" was "Incomplete" with

"Issue Source - Specially Designated Foreign Narcotics Trafficker" as the reason and matching him with a person named Angel Rodriguez in Guadalajara as shown in the image below. (Ex. BB at DT 00040.)

Park Auto South Inc

**OFAC Verification Results**

**Customer:** angel rodriguez jr

**Customer Information**

| Full Name | Address | SS# |
|---|---|---|
| angel rodriguez jr | [redacted] | [redacted] |

**OFAC Verification Results**

| Date | Status | OFAC Detail |
|---|---|---|
| 10/25/2022 12:41:13 | Incomplete | OFAC Reason:<br>• Issue Source - Specially Designated Foreign Narcotics Trafficker<br>• Issue ID - 12784<br>• Comment ID - O DOB 25MAR1970<br>• Source First Name - ANGEL<br>• Source Last Name - RODRIGUEZ<br>• Source City - GUADALAJARA<br>• Source State - JA<br>• Source Zip Code - 00237 |

(*Id.*) Minutes after these search results, at 12:44 p.m., another search by Cihon yielded a Dealertrack report showing that Rodriguez had "Passed" the "ID Verification" and the "Out of Wallet" inquiries, but nevertheless still indicated, "**OFAC !Failed**." (Ex. C at DT 00096.)

| APPLICANT ANGEL RODRIGUEZ JR | STATUS | MODIFIED BY | ACTION | |
|---|---|---|---|---|
| ID Verification | ✓ Passed | M. SMITH 10/25/2022 12:33p.m. | Run RF / OFAC Again | View |
| OFAC | Failed | M. SMITH 10/25/2022 12:41p.m. | Run OFAC | View |
| Out Of Wallet | ✓ Passed | M. SMITH 10/25/2022 12:37p.m. | Ask Questions Again | |
| Customer Investigation Report | ------ | M. SMITH 10/25/2022 11:09a.m. | Create Report | |
| Credit Bureau Authorization | ✓ Received | M. SMITH 10/25/2022 11:09a.m. | | |

(*Id.*)

Around six minutes later, at approximately 12:51 p.m., Cihon called the National Credit Center, which maintains RouteOne, and left a voicemail to further inquire about Rodriguez. (Ex. CC at NCC_0019, ECF No. 48.)[2] [redacted]

A few minutes later, at 1:03 p.m., Cihon went directly to the Treasury Department website and printed out results from a "Sanctions List Search" that he completed, using Rodriguez's first name, last name, and address, and setting the minimum name score to 50. (Ex. C at DT 00094; Cihon Dep. 38:24–40:9.) One minute later, at 1:04 p.m., Cihon printed out

[2] The record does not indicate what information, if anything, NCC provided Cihon in response to his voicemail. Cihon attests that he "called NCC and OFAC, leaving voicemails for both entities" and that he "received a call back from one entity" but it was "after Mr. Rodriguez had already received financing for the Vehicle." (Cihon Decl. ¶17.) The record does not address whether NCC or OFAC returned Cihon's call or when it did so.

another "Sanctions List Search" that he had completed on the Treasury Department website, using Rodriguez's first name, last name, and address, but this time setting the "minimum name score" to 100. (Ex. C at DT 00095; Cihon Dep. 40:10–41:9.) Both pages read, "Your search has not returned any results." (Ex. C at DT 00094; Ex. C at DT 00095.)

At 1:59 p.m. and 2:00 p.m., Cihon ran two additional searches of the OFAC list for Rodriguez's name using Dealertrack's F&I software, both of which yielded "OFAC Verification Results" reports indicating that Rodriguez's "Status" was "Incomplete" with "Issue Source - Specially Designated Foreign Narcotics Trafficker" as the reason as shown in the image below. (Ex. DD at DT 00041; Ex. EE at DT 00042.)

Park Auto South Inc

## OFAC Verification Results

**Customer:** angel rodriguez jr

**Customer Information**

| Full Name | Address | SS# |
|---|---|---|
| angel rodriguez jr | [redacted] | [redacted] |

**OFAC Verification Results**

| Date | Status | OFAC Detail |
|---|---|---|
| 10/25/2022 13:59:55 | Incomplete | OFAC Reason:<br>• Issue Source - Specially Designated Foreign Narcotics Trafficker<br>• Issue ID - 12784<br>• Comment ID - O DOB 25MAR1970<br>• Source First Name - ANGEL<br>• Source Last Name - RODRIGUEZ<br>• Source City - GUADALAJARA<br>• Source State - JA<br>• Source Zip Code - 00237 |

Park Auto South Inc

## OFAC Verification Results

**Customer:** angel rodriguez jr

**Customer Information**

| Full Name | Address | SS# |
|---|---|---|
| angel rodriguez jr | [redacted] | [redacted] |

**OFAC Verification Results**

| Date | Status | OFAC Detail |
|---|---|---|
| 10/25/2022 14:00:23 | Incomplete | OFAC Reason:<br>• Issue Source - Specially Designated Foreign Narcotics Trafficker<br>• Issue ID - 12784<br>• Comment ID - O DOB 25MAR1970<br>• Source First Name - ANGEL<br>• Source Last Name - RODRIGUEZ<br>• Source City - GUADALAJARA<br>• Source State - JA<br>• Source Zip Code - 00237 |

(Ex. DD at DT 00041; Ex. EE at DT 00042.) Both of these reports matched Rodriguez with an Angel Rodriguez in Guadalajara. (*Id.*)

At 2:06 p.m., call records show a 13 second call between Cihon and Rodriguez. (Ex. B at DT 00113.) Less than an hour later, at 3:03 p.m., Rodriguez spoke for nearly three minutes with someone on Parkway's general line. (*Id.*) Minutes later, at 3:15 p.m., Rodriguez texted his

friend, Adrian Cilona, writing that he was "so pissed off" about "not being able to get the car." (Cilona Decl., Ex. A at PLF-0000838, ECF No. 41-20; Rodriguez Dep. 177:20–178:11.)

At 4:51 p.m., Cihon visited the Treasury Department website again and printed out the "Sanctions List Search" results for Miguel Angel Belloso Rodriguez, an alleged Mexican drug trafficker. (Ex. C at DT 00091; Cihon Dep. 41:24–44:25.)[3] At 4:55 p.m., Cihon again searched the Treasury Department website and printed out a "Sanctions List Search," using Rodriguez's first name and last name, and setting the "minimum name score" to 80 on one report and 100 on another. (Ex. C at DT 00089; Ex. C at DT 00090; Cihon Dep. 48:8–49:23.)

Rodriguez spoke to someone at Parkway at 5:48 p.m. for approximately eight minutes and at 6:15 p.m. for approximately six minutes. (Ex. B at DT 00113.)

F. Cihon Submitted Rodriguez's Financing Application no Earlier Than Around 3:00 p.m. on October 25, 2022

Cihon testified that Dealertrack never listed Rodriguez as having passed or cleared the OFAC search. (Cihon Dep. 41:18–22.) Contradicting his testimony and the statement in Dealertrack's User Guide that an OFAC fail "cannot be cleared" (Ex J at DT 00133), Cihon attested by declaration that he "used Dealertrack's F&I to *clear Mr. Rodriguez's possible OFAC issue*, [and] then submitted applications on Mr. Rodriguez's behalf to lenders for the purchase of the Vehicle." (Cihon Decl. ¶¶ 28, 29 (emphasis added).) Cihon does not identify a date or time for when he submitted the credit application. Rather, he vaguely attests that, on October 25 or 26,

[3] During his deposition, Cihon did not know why he used this name to conduct the OFAC search on the Treasury Department website. (Cihon Dep. 42:13–19.) When asked, "And so it would make sense that if an organization had matched Mr. Rodriguez to someone on the OFAC list, you might print the result to which Mr. Rodriguez had been matched," he said, "Correct." (Cihon Dep. 44:14–25.) However, the Dealertrack reports in the record before this Court do not reflect the name "Miguel Angel Belloso Rodriguez." (*See* Ex. C at DT 00100; Ex. C at DT 00096; Ex. BB at DT 00040; Ex. DD at DT 00041; Ex. EE at DT 00042.)

2022, he informed Rodriguez "that he passed as verified and that any possible OFAC issue was cleared and resolved . . . ." (Cihon Decl. ¶¶ 27, 31–32.)

As set forth in the timeline above, however, on October 25, 2026, Cihon was running searches of the OFAC SDN list for Rodriguez on Dealertrack and the Treasury Department website from the time of the first Dealertrack report at 11:11 a.m. until nearly 5:00 p.m. (*See e.g.*, Ex. at A, DT 00100; Ex. C at DT 00091, DT 00090.) Moreover, neither Cihon's 2:06 p.m. call with Rodriguez nor Rodriguez's call at around 3:03p.m. with someone on Parkway's general line informed him that Parkway had submitted or intended to submit his financing application given Rodriguez's 3:15 p.m. text message to his friend expressing continued frustration about not being able to purchase the car. (Ex. A at PLF-0000838.) In light of this sequence of events, and Cihon's subsequent 4:51 p.m. and 4:55 p.m. searches for on the Treasury Department website, the record shows by a preponderance of the evidence that Cihon did not submit Rodriguez's financing application or inform Rodriguez that he intended to submit the application until at least after 3:00 p.m. on October 25, 2026. (Ex. C at DT 00091, DT 00090.)[4]

At 10:31 a.m. on October 26, 2022, Shear texted Rodriguez, "Good morning Angel, so now that we have cleared the OFAC dilemma where do we stand with the options Ron presented?" (Ex. C at DT 00116.) That afternoon, Rodriguez texted a friend, "I'm so excited. I got the green light today. Everything is a go." (Rodriguez Dep. 178:23–24.)

[4] Rodriguez was asked, "So based on these text messages, do you believe that you got the green light from Parkway Ford sometime between 3:40 p.m. on October 25th, the date and time of the message with Mr. Cilona, and October 26th at 3:21 p.m., the date and time of the text message with Ms. Starcher?" He replied, "Yes." (Rodriguez Dep. 179:7–13.)

G. <u>Rodriguez's Purchase of the Mustang</u>

Rodriguez received financing from JP Morgan Chase Bank on October 27, 2022. (Rodriguez Dep. 97:9–14.) The Mustang arrived at Parkway Ford that same day. (Shear Decl. ¶ 22.) On October 29, 2022, Rodriguez traveled to the dealership with friends to pick up his new car. (Cihon Decl. ¶ 34; Shear Decl. ¶ 23.) "When Plaintiff finally brought home the Shelby Mustang, he cried." (Rodriguez Dep. 37:18–22.)

H. <u>Rodriguez Requests his Dealertrack File</u>

In November 2022, Rodriguez mailed a letter to Dealertrack requesting his entire consumer file. (Ex. M, Pl.'s Supp. Answers to Def.'s Interrogs. at 16, ECF No. 41-13; *see also* Compl. ¶ 69.) The Complaint alleges that Rodriguez sought to determine why searches of Dealertrack indicated that he was a match on the OFAC SDN list and the identities of any third parties who received such information from Dealertrack. (Compl. ¶ 69.) Rodriguez alleges that he never received a response from Dealertrack. (*Id.* ¶ 70.)

In November 2022, Rodriguez sent Dealertrack a second letter highlighting inaccurate information in a Dealertrack report that he received from Parkway. (Ex. M at 16.) Rodriguez's letter allegedly sought to correct information in Dealertrack's record relating to Rodriguez. (*Id.*) On October 25, 2022, Rodriguez texted Shear, "Can you send me a copy of the paperwork that says it was a red flag?" and Shear replied, "I can when I am back in the office tomorrow." (Ex. A at DT 00116.) The record does not include any message or other correspondence in which Shear sent paperwork to Rodriguez. According to the Complaint, Rodriguez did not receive a response to any correspondence from Dealertrack. (Compl. ¶ 72.)

I. Rodriguez's Injuries

Rodriguez testified that he suffered emotional distress about being "wrongly accused" of being a "drug lord" because he had "saved for this car" and "looked long and hard" for it. (Rodriguez Dep. at 61:7–9, 146:10–19.) Moreover, as noted above, regarding the impact of the delay in being cleared for financing due to Dealertrack's reporting that he had failed a search of the OFAC SDN List, on October 25, 2022, at 3:15 p.m., Rodriguez texted his friend, Adrian Cilona, to express that he was "so pissed off" about "not being able to get the car." (Ex. A at PLF-0000838; Rodriguez Dep. 177:20–178:11.) The Complaint alleges that, after Dealertrack failed to reply to Rodriguez's request for the contents of his files held by the company, Rodriguez was "concerned that the inaccurate and misleading reporting could reoccur." (Compl. ¶ 15.) With respect to future injuries, the Complaint alleges that "Dealertrack has refused to correct the inaccurate and misleading information in its own report" about Rodriguez and that:

> Rodriguez fears that Dealertrack's inaccurate and misleading reporting could occur again in the future, that such reporting has already been issued to other entities, and that other entities might report the same information. Dealertrack is one of the largest providers of credit information to auto dealerships in the country, and Mr. Rodriguez intends to purchase another vehicle in the future.

(Compl. ¶¶ 74–75.)

## II. Procedural History

On July 22, 2024, Rodriguez initiated this action, bringing FCRA and NY FCRA claims against Dealertrack on behalf of himself and members of the proposed Class. (Compl. ¶ 1.) The Complaint brings the following claims:

- Count I: FCRA, 15 U.S.C. § 1681e(b), failure to establish reasonable procedures, on behalf of Plaintiff and members of the putative Class;
- Count II: FCRA, 15 U.S.C. § 1681g(a), failure to disclose, on behalf of Plaintiff;
- Count III: FCRA, 15 U.S.C. § 1681i(a)(A), failure to reinvestigate, on behalf of Plaintiff;

- Count IV: FCRA, 15 U.S.C. § 1681i(a)(6)(A), failure to provide written notice of the results of the reinvestigation, on behalf of Plaintiff;
- Count V: NY Gen. Bus. Law § 380-j, failure to maintain reasonable procedures, on behalf of Plaintiff and members of the putative Class, and N.Y. Gen. Bus. L. § 380-j(a)(4), reporting information about Plaintiff and putative Class members that it had reason to know was inaccurate;
- Count VI: NY Gen. Bus. Law § 380-d, failure to disclose, on behalf of Plaintiff; and
- Count VII: NY Gen. Bus Law § 380-f, failure to reinvestigate, on behalf of Plaintiff.

(Compl. at ¶¶ 95–130.) The Complaint seeks statutory damages under the FCRA, punitive damages, attorney's fees and costs, injunctive relief, and declaratory relief indicating "that Dealertrack committed multiple, separate violations of the FCRA and NY FCRA" and "acted negligently, knowingly, willfully, and in deliberate or reckless disregard of the rights of Plaintiff and the Class under the FCRA and NY FCRA." (Compl. at 29–30.) It also seeks an order permitting the action to proceed as a class action under Fed. R. Civ. P. 23(b)(3), designating Rodriguez as Class representative and his counsel as Class Counsel, and requiring the provision of notice to the Class at Dealertrack's expense. (*Id.*)

The parties appeared before Magistrate Judge Anne Shields for an initial conference on November 19, 2024. (Minute Entry, ECF No. 32.) Judge Shields rejected the parties' competing proposals for the completion of discovery and permitted the parties to conduct three months of limited fact discovery only as to Rodriguez's individual claims without discovery as to the claims of putative Class members. (Elec. Order, November 19, 2024.)

On May 15, 2025, Dealertrack filed a letter seeking a pre-motion conference on its anticipated motion to dismiss the Complaint under Rules 12(h)(3), 12(c), and 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."). (Def.'s Ltr. Mot.) Rodriguez opposed the request. (Resp. Ltr.) At a conference on September 2, 2025, I heard the parties' arguments concerning Dealertrack's anticipated motions and concluded that Dealertrack's proposed

summary judgment motion would not be meritorious because disputes over material questions of fact would preclude the court from granting summary judgment to Defendant, assuming that the Court has jurisdiction over the action." (Elec. Order, September 2, 2025.) I observed that Rodriguez appears to have Article III standing to pursue the FCRA claims under the Supreme Court's decision in *TransUnion LLC v. Ramirez*, 594 U.S. 413, 417 (2021), but that "Defendant identified several cases on the issue of standing that it did not cite in its [pre-motion conference] letter." (*Id.*) Accordingly, I ordered the parties to brief Dealertrack's motion for judgment on the pleadings under Rules 12(h)(3) and 12(c), which seeks dismissal of this action for lack of subject matter jurisdiction. (*Id.*)

## LEGAL STANDARDS

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). A court has no subject matter jurisdiction to hear a claim where the plaintiff lacks standing under Article III of the Constitution. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005); *Plante v. Dake*, 621 F. App'x 67, 69 (2d Cir. 2015).

Article III "limits the federal judicial power to deciding 'Cases' and 'Controversies.'" *Soule v. Conn. Ass'n of Schools*, 90 F.4th 34, 45 (2d Cir. 2023) (citing U.S. Const. art. III, § 2). A case or controversy only exists when a plaintiff has "standing" to sue because they have "a personal stake in the outcome of the litigation." *Id.* (citing *United States v. Texas*, 599 U.S. 670 (2023)). "This limitation ensures that the judiciary respects the proper—and properly limited—role of the courts in a democratic society by refraining from expounding on issues that courts have no business deciding." *Soule*, 90 F.4th at 45. A "plaintiff[] must

demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

To demonstrate standing, a plaintiff bears the burden of showing: "(1) that they suffered an injury in fact, (2) that the injury is fairly traceable to Defendants' challenged conduct, and (3) that the injury is likely to be redressed by a favorable judicial decision." *Soule*, 90 F.4th at 45 (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)). With respect to the first prong, an injury in fact "must be (1) concrete, (2) particularized, and (3) actual or imminent." *Soule*, 90 F.4th at 45. "While traditional tangible harms such as physical and monetary injuries readily qualify as concrete, so do some *intangible harms*, particularly if they have a close historical or common-law analogue." *Id.* (emphasis supplied). In *TransUnion LLC v. Ramirez*, the Supreme Court explained that to determine whether a harm is concrete as required for an injury in fact, a court may consider whether a plaintiff's alleged injury has a "close relationship" with a harm "traditionally" recognized as a basis for lawsuits in American courts. 594 U.S. 413, 424–25 (2021). It further clarified that its earlier decision in "*Spokeo*[*, Inc. v. Robins*], does not require *an exact duplicate* in American history and tradition" in order for a plaintiff's asserted injury to be sufficiently concrete so as to constitute an injury-in-fact. *Id.* at 424 (discussing *Spokeo Inc., v. Robins*, 578 U.S. 330 (2016)) (emphasis added).

When a party raises a facial challenge to a court's subject matter jurisdiction, "the plaintiff has no evidentiary burden"; the district court need only "determine whether the [p]leading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016); *see also Lugo v. City of Troy*, 114 F.4th 80, 87 (2d Cir. 2024). In assessing a facial challenge to standing, a court "must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable

inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014).

By contrast, when a party has placed jurisdictional facts in dispute by "offer[ing] extrinsic evidence that contradicts the material allegations of the complaint," "the court has the obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 442 (2022). When the extrinsic evidence "reveals the existence of factual problems," the plaintiff "will need to come forward with evidence controverting that presented by the defendant" regarding standing. *Lugo*, 114 F.4th at 87. "In that case, the party asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Tandon*, 752 F.3d at 243; *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 120 (2d Cir. 2017) (same). "[I]f the evidence proffered by the defendant is immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing," the plaintiffs "are entitled to rely" on the complaint's allegations. *Carter*, 822 F.3d at 57.

**DISCUSSION**

In *TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021), the Supreme Court had "no trouble concluding" that a group of 1,853 class members whom TransUnion had labeled as "potential match[es]" to persons on the OFAC SDN List had Article III standing to bring FCRA claims against TransUnion. Here, on at least five separate occasions during the morning and afternoon of October 25, 2022, Dealertrack published to third parties search results that indicated Rodriguez was a match to a name on the OFAC SDN List. The first report explicitly stated that Rodriguez was a "**Failed** Match found on OFAC" as a first and last name match to a "Specially Designated Foreign Narcotics Trafficker" in Guadalajara, while a second report confirmed that

Rodriguez continued to fail OFAC screening notwithstanding clearance of Dealertrack's identification verification and "Out of Wallet" questions. Moreover, three subsequent Dealertrack reports confirmed that Rodriguez had not cleared OFAC screening due to an association with a Specially Designated Foreign Narcotics Trafficker named Angel Rodriguez in Guadalajara. (Ex. BB at DT 00040; Ex. DD at DT 00041; Ex. EE at DT 00042.)

*TransUnion*, which involved similar claims and nearly identical facts, squarely controls the standing analysis on Rodriguez's damages claims under the FCRA and NY FCRA brought on behalf of himself and members of the putative Class, which challenge Dealertrack's alleged failure to take reasonable procedures to ensure that the OFAC reports for Rodriguez and putative class members contain accurate information. Furthermore, Dealertrack's alleged failure to disclose Rodriguez's files and to conduct a reasonable reinvestigation of its records relating to Rodriguez caused him informational and concrete injuries that support standing to pursue damages on his own behalf under the FCRA and NY FCRA.

Moreover, with respect to Rodriguez's claims for prospective relief, evidence in the record and the well pled allegations of the Complaint plausibly allege that Rodriguez faces a substantial risk of future harm that he will again be subject to defamatory Dealertrack OFAC reports when purchasing a car in the future as a result of Dealertrack's failure to take reasonable procedures. Based on this risk of future injury, Rodriguez has standing to pursue reasonable procedures claims under the NY FCRA for injunctive relief on his own behalf. However, Rodriguez lacks standing to pursue injunctive relief claims on behalf of the proposed Class because nothing in the Class definition or record shows that putative Class members intend to purchase vehicles in the future.

Rodriguez also lacks standing to pursue his FCRA claim for damages challenging the lack of written notice due to the failure to identify any past injury from Dealertrack's alleged failure to provide such notice after conducting a reinvestigation. Further, Rodriguez lacks standing to pursue the declaratory relief sought in the Complaint, which is framed as backward-looking rather than forward-looking relief. The Complaint also fails to plead that Rodriguez faces any plausible ongoing or certainly impending injury or any substantial risk of future harm that would confer standing to pursue injunctive relief for himself or members of the putative Class on the failure-to-disclose and reinvestigation claims under the NY FCRA.

Dealertrack generally contends that Rodriguez lacks standing for two reasons. First, it maintains that Rodriguez has failed to identify any concrete injury because the specific OFAC reports at issue "would not give rise to the common-law presumption of injury that was critical to the Supreme Court's standing analysis in *TransUnion*." (Def.'s MTD Mem. at 1.) Second, Dealertrack argues that "Plaintiff did not point to any such injury caused ***by Dealertrack***." (*Id*. at 15 (emphasis in original).)

Dealertrack's arguments, which solely contest Rodriguez's damages claims, ignore controlling Second Circuit caselaw and rely on out-of-Circuit cases. Its contention that Rodriguez has not shown a concrete injury because he has allegedly failed to prove essential elements of common-law defamation other than publication to a third party of a statement that would cause ridicule or contempt ignores the Second Circuit's decision in *Salazar v. National Basketball Ass'n*, 118 F.4th 533 (2d Cir. 2024), which held that a plaintiff "alleging intangible harm" is not required to "identify and establish an exact duplicate in common law." *Id*. at 542 n.6. Moreover, Dealertrack's effort to blame another entity—the National Credit Center—for its own defamatory publications to third parties is unsuccessful as the record shows that

Rodriguez's reputational harm, emotional injuries, and experience of delays are traceable to Dealertrack. Finally, the company's claim that Rodriguez lacks standing for his failure-to-disclose and reinvestigation claims ignores the Complaint's plausible allegations of past injuries that grant Rodriguez standing to pursue damages for these claims under the FCRA and NY FCRA.

## I. Rodriguez has Standing to Pursue Reasonable Procedures Claims

The undisputed record shows that Rodriguez has Article III standing to pursue damages claims under FCRA Section 1681e and NY FCRA Section 380-j(e) for Dealertrack's failure to follow reasonable procedures to ensure the accuracy of OFAC reports on behalf of himself and the putative Class.[5]

A brief summary of the nearly identical facts in *TransUnion* is instructive. In *TransUnion*, a Nissan car dealership salesman searched for Ramirez in a TransUnion database and retrieved the following results: "OFAC ADVISOR ALERT - INPUT NAME MATCHES NAME ON THE OFAC DATABASE." *TransUnion LLC*, 594 U.S. at 420. Because this report associated Ramirez with inclusion on a "terrorist list[,]" the salesman said he could not sell Ramirez the vehicle, and Ramirez's wife had to purchase the car in her name. *Id*. The Supreme Court held that "publication to a third party of a credit report bearing a misleading OFAC alert injures the subject of the report." *Id*. at 432. Because "TransUnion provided third parties with credit reports containing OFAC alerts that labeled the class members as potential terrorists, drug

[5] "Because the language of the NY FCRA and the FCRA is substantially similar, the two statutes must be construed in the same way." *Mader v. Experian Info. Sols., Inc.*, 56 F.4th 264, 267 n.1 (2d Cir. 2023); *Abdallah v. LexisNexis Risk Sols. FL Inc*., No. 19cv3609, 2021 WL 1209419, at *7 (E.D.N.Y. Mar. 30, 2021) ("The provisions of the NY FCRA are essentially identical to those of the FCRA [Section 1681e(b)], and have been construed using the same standards applicable to the federal act.").

traffickers, or serious criminals" the Court had "no trouble concluding that the 1,853 class members suffered a concrete harm that qualifies as an injury in fact" to support Article III standing to bring FCRA Section 1681e claims for damages. *Id.* Rodriguez's injuries in the form of reputational harm, emotional distress, and delayed approval for financing of his dream car due to Dealertrack's alleged failure to take reasonable procedures are no different. (Rodriguez Dep. 145:6–147:10.) Moreover, Rodriguez has suffered the same kind of past injuries as those suffered by members of the putative Class. Accordingly, Rodriguez has standing to pursue his FCRA and NY FCRA reasonable procedures claims for damages on an individual and classwide basis. *See Hines v. Equifax Info. Servs.*, LLC, No. 19-cv-6701, 2022 WL 2841909, at *12 (E.D.N.Y. July 16, 2022), *report and recommendation adopted as modified*, No. 19-cv-6701, 2024 WL 4132333 (E.D.N.Y. Sept. 10, 2024) (finding that a named plaintiff may seek damages on behalf of a proposed class where the plaintiff and the class suffered the same alleged injuries.)

Finally, although neither party addresses Rodriguez's standing to bring claims for prospective relief, the allegations of the Complaint plausibly allege that Rodriguez faces a substantial risk of future harm from Dealertrack's failure to follow reasonable procedures to ensure the accuracy of its OFAC screening reports. Thus, Rodriguez has standing to pursue the NY FCRA reasonable procedures claims for injunctive relief on an individual basis. However, Rodriguez lacks standing to pursue the NY FCRA reasonable procedures claims for prospective relief on behalf of members of the putative Class because there is no allegation that Class members, like Rodriguez, intend to purchase vehicles in the future and therefore are likely to suffer similar injuries due to Dealertrack's challenged failure to take reasonable procedures. Similarly, Rodriguez lacks standing to pursue the particular declaratory relief sought in the Complaint because such relief is backward, rather than forward, looking.

A. Rodriguez has Alleged Concrete Injuries Supporting his Reasonable Procedures Claims for Damages

*i. Rodriguez has Suffered Injuries in Fact Supporting Damages Claims*

As explained above, when an injury is intangible, a plaintiff may demonstrate concreteness through "a close historical or common-law analogue." *Soule*, 90 F.4th at 45–46. "Under longstanding American law, a person is injured when a defamatory statement that would subject him to hatred, contempt, or ridicule is published to a third party." *TransUnion LLC*, 594 U.S. at 432; *see also Porges v. Weitz*, 205 A.D.3d 13, 17 (2022) ("The elements of a cause of action for defamation are (a) a false statement that tends to expose a person to public contempt, hatred, ridicule, aversion, or disgrace, (b) published without privilege or authorization to a third party, (c) amounting to fault as judged by, at a minimum, a negligence standard, and (d) either causing special harm or constituting defamation per se . . . .") The undisputed record shows that Dealertrack published to Parkway multiple reports that labeled Rodriguez a match with a Specially Designated Foreign Narcotics Trafficker in Guadalajara. These reports are sufficiently analogous to defamation such that Dealertrack's publication of them to Parkway—a third party—caused Rodriguez concrete reputational injury. Dealertrack's contention that these reports were "not defamatory on [their] face" (Def.'s MTD Mem. at 1, 10), is a misrepresentation of the record.

It is undisputed that on October 25, 2022, Dealertrack published to Parkway—a third party—five separate reports that Rodriguez matched a name on the OFAC SDN List. The first such report at 11:11 a.m. stated that Rodriquez's "OFAC Status" was "**Failed** Match found on OFAC" due to a "First Name Match" and "Last Name Match," with a "Specially Designated Foreign Narcotics Trafficker" named Angel Rodriguez in Guadalajara. (Ex. A at DT 00100.) Around one and a half hours later, at around 12:44 p.m., Dealertrack published to Parkway a

report that Rodriguez had "Passed" the "ID Verification" and the "Out of Wallet" inquiries, but nevertheless was still "**OFAC !Failed**." (Ex. BB at DT 00040.) Cihon also retrieved three additional Dealertrack reports, at 12:41 p.m., 1:59 p.m., and 2:00 p.m., which stated that Rodriguez's "OFAC Verification Results" were "Incomplete" due to "Issue Source - Specially Designated Foreign Narcotics Trafficker," specifically, a person named Angel Rodriguez in Guadalajara. (Ex. BB at DT 00040; Ex. DD at DT 00041; Ex. EE at DT 00042.) Rodriguez suffered concrete reputational injuries from Dealertrack's publication of these reports to Parkway.

Specifically, Rodriguez was injured as soon as the 11:11 a.m. Dealertrack report informed Parkway employees that Rodriguez was "**Failed** Match found on OFAC" due to a "First Name Match" and "Last Name Match," with a "Specially Designated Foreign Narcotics Trafficker." (Ex. at A, DT 00100.) Cihon understood the gravity of Dealertrack's report that Rodriguez was a match to a name on the OFAC list because he knew it was "illegal to do any kind of business transaction with someone who's on the OFAC list," which contained the names of "terrorists . . . drug dealers, drug traffickers, things like that, that . . . you don't want to be associated with . . . ." (Cihon Dep. 18:5–9.) Rodriguez "therefore suffered a harm with a 'close relationship' to the harm associated with the tort of defamation." *TransUnion LLC*, 594 U.S. at 432. Moreover, Rodriguez suffered additional reputational harm after the initial 11:11 a.m. report because Cihon's subsequent searches yielded an additional Dealertrack report stating that Rodriguez continued to fail screening against the OFAC list—an "**OFAC !Failed**"—even after having "Passed" the "ID Verification" and "Out of Wallet" inquiries (Ex. BB at DT 00040), and three additional reports stating that Rodriguez's "OFAC Verification Results" continued to

associate him with a "Specially Designated Foreign Narcotics Trafficker." (Ex. BB at DT 00040, Ex. DD at DT 00041, Ex. EE at DT 00042).

Moreover, the record establishes that Rodriguez's injury was not just concrete, but also particularized and actual. Dealertrack does not contest that the asserted injuries satisfy these requirements for an injury in fact. (*Cf.* Def.'s MTD Mem.) Particularity is satisfied because the asserted reputational harm from Dealertrack's reports that Rodriguez failed the OFAC SDN List screening and was associated with a Specially Designated Narcotics Trafficker concern Rodriguez himself. *See Soule*, 90 F.4th at 46 (explaining that a plaintiff's claim challenging an action or practice as applied to the plaintiff himself satisfies the particularity requirement). "Finally, the injury is actual because it . . . already occurred." *Id.* at 47. As a result, the five Dealertrack reports published to Parkway, which indicated that Rodriguez failed screenings of the OFAC SDN List and was a match to a Specially Designated Narcotics Trafficker named Angel Rodriguez in Guadalajara, evidence an intangible reputational injury that is sufficiently concrete to constitute an injury in fact supporting standing to bring reasonable procedures claims under the FCRA and NYFRCA.

Dealertrack makes three arguments to contest the concreteness of the injury suffered by Rodriguez. None are persuasive.

First, Dealertrack argues that Rodriguez fails to meet the essential elements of defamation, without explaining what elements beyond the publication of a defamatory statement would subject one to the contempt of a third party are required. *TransUnion LLC*, 594 U.S. at 432; Def.'s MTD Mem. at 9–10. Dealertrack implies that defamation requires the "third party reading and comprehending the accusation." (*Id.* (citing *Fernandez v. RentGrow, Inc.*, 116 F.4th 296 (4th Cir. 2024).) However, Dealertrack's reliance on the Fourth Circuit's decision

in *RentGrow* is unpersuasive and inapplicable. In that case, the report indicating that the apartment applicant matched the profile of a criminal was sent to a third-party recipient, but the evidence showed that the recipient did not *read* this portion of the report. 116 F.4th at 292–93. By contrast, here, Cihon not only testified he "always read the OFAC results" when there was a "failure" result (Cihon Dep. 18:21–22), the record shows he conducted all of the Dealertrack OFAC searches for Rodriguez, read the results, printed them, and relayed at least some results to Shear. (Cihon Dep. 21:2–24, 27:2–16, 31:2–13, 38:7–23; Pl.'s CSMF ¶ 36.) Cihon also testified that he understood the gravity of the Dealertrack reports that Rodriguez had failed OFAC screening and was a match to a Specially Designated National named Angel Rodriguez in Guadalajara because he knew the OFAC SDN List contained "terrorists . . . drug dealers, drug traffickers, things like that, that . . . you don't want to be associated with . . . ." (Cihon Dep. 18:5–9.) Because Dealertrack published more than one inaccurate and misleading statement that would cause Rodriguez to be subjected to hatred, ridicule or contempt to a third party who read and understood those statements, and because the statements constitute defamation per se, Dealertrack's reports caused Rodriguez reputational injuries that bears a sufficiently close relationship to defamation. *See Porges*, 205 A.D.3d at 17 (setting forth the elements of defamation).

Second, Dealertrack contends that the publication at issue here does not bear a close relationship with the tort of defamation because the publications purportedly were not defamatory "on [their] face" in light of the "particular phraseology" of Dealertrack's reports. (Def.'s MTD Mem. at 10–11.) As a threshold matter, Dealertrack misconstrues the law on defamation, arguing that "the Dealertrack report in *this* case is not defamatory on its face because it did not charge plaintiff with a crime." (*Id.* at 1 (emphasis in original).) In *TransUnion*, the

Supreme Court did not require that the OFAC report charge a crime in order for Ramirez and class members to have suffered an injury in fact. 594 U.S. at 432–333. Rather, it recognized that OFAC alerts "labeling class members as *potential* terrorists, drug traffickers, or serious criminals" effected a "harm with a close relationship to the harm associated with the tort of defamation," which satisfied the concreteness requirement for Article III standing. *Id* at 432. In fact, the Supreme Court had "no trouble concluding that the 1,853 class members suffered a concrete harm that qualifies as an injury in fact" even though the reports at issues only labeled them "*potential*" drug traffickers, terrorists, and serious criminals. *Id.*

For the same reasons, Dealertrack's reliance on *O'Connell v. Press Publishing Co.*, 214 N.Y. 352, 359–60 (N.Y. 1915), to argue that its reports about Rodriguez did not "charge [him] with a crime or expose him to contempt, ridicule, or disgrace," as required for Article III standing contradicts the plain text of *TransUnion*. (*See* Def.'s MTD Mem. at 12.) The Supreme Court explicitly instructed that an "exact duplicate" to a common law analog is not required to find that an intangible injury is concrete. *Id*. Rather, it held that a "close relationship" to defamation is sufficient and that "[t]he harm from being labeled a '*potential* terrorist' bears a close relationship to the harm from being labeled a 'terrorist.'" *Id.* (emphasis added). "In other words, the harm from *a misleading statement of this kind* bears *a sufficiently close relationship* to the harm from a false and defamatory statement." *Id.* (emphasis added). These standards squarely apply here where Dealertrack published an inaccurate and misleading report that Rodriguez was a "**Failed** Match found on OFAC" as a "First Name Match" and "Last Name Match," with a "Specially Designated Foreign Narcotics Trafficker" in Guadalajara (Ex. at A, DT 00100), an inaccurate and misleading report confirming that Rodriguez continued to fail screening against the OFAC list—an "**OFAC !Failed**"—even after having "Passed" the "ID Verification" and the

"Out of Wallet" inquiries, and three inaccurate and misleading reports stating that Rodriguez's "OFAC Verification Results" associated him with a "Specially Designated Foreign Narcotics Trafficker" named Angel Rodriguez in Guadalajara. (Ex. BB at DT 00040; Ex. DD at DT 00041; Ex. EE at DT 00042.) As a result, Dealertrack's statements about Rodriguez are defamatory and sufficiently similar to the publication of defamatory information about Ramirez and class members in *TransUnion*, if not worse, given that two of Dealertrack's reports explicitly stated that Rodriguez was a "**Failed** Match found on OFAC" and "**OFAC !Failed**"—not just that he was a *potential* match. (Ex. at A, DT 00100; DT 00096.)

Third, Dealertrack argues that there is no close relationship between the publication at issue here and the tort of defamation because there is purportedly no evidence of reputational injury, which Dealertrack maintains is required under the common law. (Def.'s MTD Mem. at 12–14.) Dealertrack relies on cases from the 1980s, including *Salomone v. MacMillan Publishing Co., Inc.*, 429 N.Y.S.2d 441 (1st Dept 1980), for the proposition that specific evidence of reputational injury aside from the allegedly defamatory publication itself is required to recover for defamation. (*See* Def.'s MTD Mem. at 13.) However, New York courts no longer require specific proof of damages flowing from a defamatory publication in order for a plaintiff to recover on a defamation claim. Today, a plaintiff who alleges defamation per se is not also required to present specific proof of reputational harm. *Nolan v. State of New York*, 69 N.Y.S.3d 277, 283 (1st Dep't 2018); *see also S&P Pharmacy Corp. v. Syed*, 235 N.Y.S. 3d 628, 631 (2d Dep't 2025) ("A false statement constitutes defamation per se if, inter alia, it charges another with a serious crime or *tends to injure another in his or her trade business, or profession*. (emphasis added).); *Elhanafi v. Fox Television Stations, Inc.*, 966 N.Y.S.2d 345 (Sup. Ct. Kings Cty. 2012) (denying motion to dismiss and holding that subject news story, which included a

"juxtaposition of aural and visual imagery [that] create[ed] the portrayal of plaintiffs of Middle Eastern terrorists" met the standards for "libel *per se*"). Dealertrack's reliance on *Salomone* is unavailing as it was decided nearly 45 years before *Nolan*, 69 N.Y.S.3d at 283, where the First Department explicitly recognized that a defamation per se claim does not require specific proof of reputational harm.

Accordingly, contrary to Dealertrack's contention, what Parkway employees did or did not believe or whether they predicted that Dealertrack would report that Rodriguez failed OFAC screening is irrelevant to the question of whether Rodriguez experienced intangible reputational harm. Here, Dealertrack *did* publish that Rodriguez was a "**Failed** Match found on OFAC" as a match to a "Specially Designated Narcotics Trafficker" named Angel Rodriguez in Guadalajara and that he had failed OFAC screening—"**OFAC !Failed**"—notwithstanding having passed the "Out of Wallet" questions and ID verification. (Ex. at A, DT 00100; DT 00096.) Here, the reputational injury stems from publication to Parkway—a third party—of inaccurate and misleading information imputing drug trafficking activity and inclusion on the OFAC SDN List to Rodriguez. *See* RESTATEMENT (SECOND) OF TORTS § 571 ("One who publishes a slander that imputes to another conduct constituting a criminal offense is subject to liability to the other *without proof of special harm* if the offense imputed is of a type which, if committed in the place of publication, would be: (a) punishable by imprisonment in a state or federal institution, or (b) regarded by public opinion as involving moral turpitude." (emphasis added)).[6]

[6] Cihon's statement in his October 25, 2022 voicemail to NCC that he believed Rodriguez was a false positive is similarly irrelevant because the Dealertrack reports reporting Rodriguez as having failed OFAC screening as a match to a Specially Designated Narcotics Trafficker are defamatory on their face.

Moreover, the Second Circuit's decision in *Salazar* squarely forecloses Dealertrack's argument that Rodriguez must show evidence of reputational harm separate and apart from the publication of information that inaccurately and misleadingly imputes potentially criminal conduct to him. 118 F.4th at 542 n.6. In *Salazar*, the Second Circuit explicitly recognized that it has "applied *TransUnion* in at least four published opinions to determine whether an alleged harm satisfies Article III standing's concreteness requirement" and "*did not*, in any of those cases, hold that *TransUnion* demands that a plaintiff adequately plead *every* element of a common-law analog to satisfy the concreteness requirement." *Id.* (emphasis added). Under these standards, it is clear that not every element of a common law defamation claim must be established for the intangible injury of reputational harm conveyed by an inaccurate and misleading publication to establish an injury in fact.[7]

*ii. Rodriguez has Plausibly Alleged a Substantial Risk of Future Injury from Dealertrack's Failure to Follow Reasonable Procedures*

Where a "plaintiff[ ] seek[s] injunctive or declaratory relief, they cannot rely on past injury to satisfy the injury requirement but must show a likelihood that they will be injured in the

---

[7] Dealertrack cites a handful of cases in this District for the proposition that there is no concrete injury absent reputational damage. (Def.'s MTD Mem. at 1, 9, 15.) However, all of these cases are distinguishable because they do not involve dissemination of inaccurate or defamatory material to third parties or because there was no alleged injury. *See e.g.*, *Alvarez v. Experian Info. Sols., Inc.*, 758 F. Supp. 3d 60, 81 (E.D.N.Y. 2024) (finding that plaintiff failed to allege that the information disseminated was false or defamatory, so that plaintiff lacked standing; however, another plaintiff whose report said he was a "match" did have standing); *Zlotnick v. Equifax Info. Servs., LLC*, 583 F. Supp. 3d 387, 391 (E.D.N.Y. 2022) (finding that plaintiff failed to allege that the false information about his credit score was disseminated to any third party creditors); *Sali v. Zwanger & Pesiri Radiology Grp., LLP*, No. 19-cv-275, 2022 WL 17832857, at *2 (E.D.N.Y. Dec. 21, 2022) (finding that there was no dissemination to third parties and no allegations of injury). Finally, *Maddox v. Bank of New York Mellon Tr. Co., N.A.*, is also distinct because in that case, there was no reputational harm because no one *read* the false information at issue. 19 F.4th 58, 65 (2d Cir. 2021).

future." *Dorce v. City of New York*, 2 F.4th 82, 95 (2d Cir. 2021). "Such an allegation of future injury will be sufficient only if the threatened injury *is certainly impending*, or there is a *substantial risk that the harm will occur*." *Id.* (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (emphasis added)).

The Complaint plausibly alleges that Rodriguez faces a substantial risk of future injury from Dealertrack's failure to take reasonable procedures. The record includes the evidence detailed above demonstrating that Rodriguez suffered reputational harm, emotional distress, and delayed approval for financing from Dealertrack's publication of reports to Parkway indicating that Rodriguez had failed OFAC screening as a match to a Specially Designated Foreign Narcotics Trafficker named Angel Rodriguez in Guadalajara. *See* Discussion § I.A(i). In addition, the Complaint alleges that:

> Dealertrack has refused to correct the inaccurate and misleading information in its own report . . . For these reasons, Mr. Rodriguez fears that Dealertrack's inaccurate and misleading reporting could occur again in the future, that such reporting has already been issued to other entities, and that other entities might report the same information. Dealertrack is one of the largest providers of credit information to auto dealerships in the country, and Mr. Rodriguez intends to purchase another vehicle in the future.

(Compl. ¶¶ 73, 74.) Because Rodriguez is a "car guy" who "intends" to purchase another car and Dealertrack is one of the "largest providers of credit information" to car dealerships across the United States, there is a substantial risk that Rodriguez may again be subject to inaccurate and misleading Dealertrack OFAC screening reports that identify him as failing OFAC screening as a match to a Specially Designated Narcotics Trafficker named Angel Rodriguez in Guadalajara. (Rodriguez Dep. 31:12–13; Compl. ¶ 75.)

This case is therefore different from *Dorce*, 2 F.4th 82, where the Second Circuit affirmed the dismissal of injunctive and declaratory relief claims due to plaintiffs' failure to

allege ongoing or future harm that would support Article III standing. *Id.* at 88. The Complaint plausibly alleges that Rodriguez faces a substantial risk of future reputational harm, emotional distress, and delayed clearance to apply for financing from Dealertrack's failure to follow reasonable procedures to ensure the maximum possible accuracy in its OFAC search results.

B. Rodriguez's Past and Future Injuries are Fairly Traceable to Dealertrack

Rodriguez has shown that he has suffered the publication of inaccurate or misleading information to Parkway, as well as resulting emotional distress and delay, all of which are "fairly traceable" to Dealertrack's failure to follow reasonable procedures. *Spokeo*, 578 U.S. at 338. To demonstrate that an injury is fairly traceable to a defendant, "there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . traceable to the challenged action of the defendant, and not . . . the result of the independent action of some third party not before the court." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). In the context of traceability, "it is well-settled that for standing purposes, petitioners need not prove a cause-and-effect relationship with absolute certainty; substantial likelihood of the alleged causality meets the test." *Nat. Res. Def. Council v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 104 (2d Cir. 2018). Likewise, "[t]he fact that the defendant's conduct may be only an indirect cause is not necessarily fatal to standing," *Chevron Corp. v. Donziger*, 833 F.3d 74, 121 (2d Cir. 2016). Accordingly, "the traceability analysis does not require a defendant's actions to be the exclusive or even proximate cause of the alleged injury." *Neske v. New York City Dep't of Educ.*, No. 19-cv-2933, 2019 WL 3531959, at *4 (S.D.N.Y. Aug. 2, 2019).

Dealertrack's publication of the OFAC search reports about Rodriguez throughout the day on October 25, 2022, plausibly caused him intangible reputational harm, emotional distress, and delay. As explained above, after receiving reports from another software that Rodriguez

failed to pass OFAC SDN screening, Cihon conducted searches of the OFAC SDN list through Dealertrack's F&I software. (Cihon Decl. ¶ 21.) At around 11:11 a.m., Dealertrack published a report stating that Rodriguez was a "**Failed** Match found on OFAC" due to a "First Name Match" and "Last Name Match" with a "Specially Designated Foreign Narcotics Trafficker" named Angel Rodriguez with a birthdate of March 25, 1970, and a "Source City" of Guadalajara. (Cihon Decl. ¶ 21; Ex. at A, DT 00100.) Even after Rodriguez correctly answered the "Out of Wallet" questions at 12:37 p.m., Cihon checked Dealertrack and received a report at around 12:44 p.m. confirming that Rodriguez continued to fail OFAC screening—an "**OFAC !Failed**"—even after having "Passed" the "ID Verification" and the "Out of Wallet" inquiries. (Ex. BB at DT 00040.) Moreover, Cihon continued to search Dealertrack and retrieved additional reports at 12:41 p.m., 1:59 p.m., and 2:00 p.m., stating that Rodriguez's "OFAC Verification Results" associated him with a "Specially Designated Foreign Narcotics Trafficker" named Angel Rodriguez. (Ex. BB at DT 00040; Ex. DD at DT 00041; Ex. EE at DT 00042.)[8] At 3:15 p.m., Rodriguez texted his friend saying he was "so pissed off" over "not being able to get the car." (Cilona Decl., Ex. A at PLF-0000838; Rodriguez Dep. 177:20–178:11.) Thus, Rodriguez had still not been informed that Parkway had cleared him to apply for financing to purchase the Mustang as of at least 3:15 p.m. on October 25, 2022, which is more than four hours after Cihon began retrieving Dealertrack reports concerning searches of the OFAC SDN list for Rodriguez. (Ex. A at DT 00100.)

Likewise, Rodriguez's substantial risk of future injury is fairly traceable to Dealertrack's failure to take reasonable procedures. The risk that Dealertrack could publish inaccurate or

---

[8] This evidence also contradicts Dealertrack's assertion that Rodriguez did not provide sufficient evidence aside from his own affidavit. (*Cf.* Def.'s MTD Mem. at 16.)

misleading OFAC screening reports about Rodriguez to another car dealership in the course of Rodriguez's efforts to purchase another car, as he intends to do, is traceable to the company's failure to take reasonable procedures to ensure that Rodriguez's file contains only accurate information. (Compl. ¶ 75.)

Dealertrack argues that any injury to Rodriguez was caused solely by NCC (not Dealertrack) "prior to the Dealertrack report" and that Rodriguez suffered no injury after he answered Dealertrack's "Out of Wallet" questions. (Def's Mem. at 15, 17.) Neither argument is supported by the record. As a threshold matter, Dealertrack's publication at least five times on October 25 of defamatory information about Rodriguez constitutes its own unique harm. Furthermore, regardless of the RouteOne results that predated Cihon's use of Dealertrack's software, nothing in the record shows that Cihon submitted Rodriguez's financing application, or that Parkway Ford notified Rodriguez that his financing application would be submitted, at any time before around 3:00 p.m. on October 25, 2022 given that Rodriguez spoke with someone on the Parkway line at about 3:03 p.m. and then texted his friend about his frustration about not being able to purchase the car at 3:15 p.m. (Ex. B at DT 00113; Ex. A at PLF-0000838.) Although Cihon vaguely attests by declaration that he called Rodriguez to inform him that the OFAC screening had been resolved sometime on October 25 or 26, 2022, any such call happened, at the earliest, *after* 3:15 p.m. on October 25, 2022 in light of the timeline recounted above. As discussed, between 11:11 a.m. and 4:55 p.m. on that day, Cihon was running numerous OFAC searches for Rodriguez using Dealertrack's F&I software and the Treasury Department website, printing those reports, and calling the NCC and Rodriguez, and as of 3:15 p.m., despite having spoken with Cihon at around 2:00 p.m. and another Parkway employee at 3:03 p.m., Rodriguez was still expressing frustration at not being able to purchase the car. *See*

*supra* Factual Background § I(F). Moreover, Rodriguez testified that he believed Parkway communicated to him that he was given the green light from Parkway sometime between 3:40 p.m. on October 25, 2022 and 3:21 p.m. on October 26, 2022. (Rodriguez Dep. 179:7–13.)

Accordingly, regardless of any conduct by NCC, Cihon delayed submitting Rodriguez's financing application from the time of the first Dealertrack report at 11:11 a.m. on October 25, 2022, until at least around 3:00 p.m. that day, if not until the following morning just before Shear contacted Rodriguez at around 10:31 a.m. to report that the OFAC issues were cleared. Thus, even if the emotional distress and delay from October 22, 2022 to the morning of October 25, 2022 in Rodriguez's ability to purchase the Mustang was traceable to NCC, *the additional delay* from October 25, 2022 at 11:11 a.m. through at the very least 3:00 p.m. that day, if not until the morning of October 26, 2022, is fairly traceable to Dealertrack's reports that Rodriguez failed the OFAC screening as a match to a Specially Designated Narcotics Trafficker named Angel Rodriguez in Guadalajara. The record therefore demonstrates a "substantial likelihood" that Dealertrack's reports caused Rodriguez anywhere from around four to 24 hours of additional delay and emotional distress such that these harms are traceable to Dealertrack. *Nat. Res. Def. Council*, 894 F.3d at 104. Whether Dealertrack's actions were the "exclusive or even proximate cause of the alleged injury" is irrelevant to the traceability analysis. *Neske*, 2019 WL 3531959, at *4.

Dealertrack's contention that Rodriguez suffered no injury after he passed Dealertrack's "Out of Wallet" questions at 12:37 p.m. is also squarely contradicted by the record. Cihon continued using Dealertrack to search the OFAC SDN List for Rodriguez four times *after* Rodriguez correctly answered the "Out of Wallet" questions. He received a 12:44 p.m. report confirming that Rodriguez continued to fail screening against the OFAC list—an "**OFAC**

**!Failed**"—even after having "Passed" the "ID Verification" and the "Out of Wallet" inquiries, and received three reports—at 12:41 p.m., 1:59 p.m., and 2:00 p.m.—explicitly stating that Rodriguez's "OFAC Verification Results" associated him with a "Specially Designated Foreign Narcotics Trafficker." (Ex. BB at DT 00040; Ex. DD at DT 00041, Ex. EE at DT 00042). Cihon testified that Dealertrack never listed Rodriguez as having passed or cleared the OFAC search, which explains why he continued using Dealertrack's F&I software to search the OFAC SDN List for Rodriguez's name after receiving the initial 11:11 a.m. report. (Cihon Dep. 41:18–22; Ex. DD at DT 00041; Ex. EE at DT 00042.) The record thus contradicts Dealertrack's contention that there is no evidence that Cihon continued to run Dealertrack reports on Rodriguez because of information published by Dealertrack.

Dealertrack's argument that Rodriguez was "approved ***mere hours after*** Deleartrack's report" is beside the point. (Def.'s Mem. MTD at 15 (emphasis in original).) As noted above, although Cihon testified that he submitted Rodriguez's financing application on either October 25 or October 26, 2022, nothing in the record shows that this took place prior to the first Dealertrack report at 11:11 a.m. on October 25, 2022, or even at any specific time on October 25, 2022. Moreover, based on the tight sequence in which Cihon ran repeated searches of the OFAC SDN List for Rodriguez using Dealertrack's F&I software on October 25, 2022—with searches at 11:11 a.m., 12:41 p.m., 12:44 p.m., 1:59 p.m., and 2:00 p.m., a call to NCC at 12:51 p.m., and Rodriguez at 2:06 p.m., and his continued searches of the OFAC Sanctions list at 4:51 p.m. and 4:55 p.m.—the record shows by a preponderance of evidence that Cihon did not submit Rodriguez's financing application at any time before around 3:00 p.m. that day. *See supra* Factual Background § I.D–F. Moreover, Rodriguez experienced emotional distress and delay on October 25, 2022, as shown by his text message to his friend at around 3:15 p.m.—hours after he

had answered Dealertrack's "Out of Wallet" questions, more than one hour after he had a call with Cihon at around 2:06 p.m., and minutes after his 3:03 p.m. call with someone on the Parkway general telephone line. (Ex. B at DT 00113; Ex. C at DT 00096; Ex. A at PLF-0000838.) The intangible harm from the Dealertrack reports as well as Rodriguez's resulting emotional distress and delay are clearly traceable to Dealertrack.[9]

Although Dealertrack relies on Rodriguez's testimony to argue that he experienced no injury from the delay in approval for financing traceable to Dealertrack's reports about him, the record shows by a preponderance of the evidence that Rodriguez experienced the injury of delay. Rodriguez's text message to his friend at around 3:15 p.m. on October 25, 2022 shows that he was experiencing a delay in being cleared to apply for financing to purchase the car and suffered frustration as a result. (Ex. A at PLF-0000838.) Moreover, the testimony on which Dealertrack relies for the proposition that Rodriguez did not experience any injury from delay actually underscores that Rodriguez *did* suffer from emotional distress:

> Q. Okay. Let's focus on the third component of damages: Delay.
> Please testify to the facts supporting delay, the injury of delay vis-a-vis Dealertrack?
> A. The facts were no Social Security number, no birth date, you accused the wrong person of being something he's not.
> Q. How is that a delay injury?
> A. There is no injury.
> Q. Anything else on delay?
> A. No. I'm just frustrated.
> Q. I understand. I understand.
> A. I don't think you do. I really don't think you do.
> Q. That's also fair.

[9] As noted above, Defendant's reliance on *Spitz*, for the notion that wasted time is insufficiently concrete to support an injury in fact for Article III standing is unpersuasive. (Defs.' MTD Mem. at 15 (citing *Spitz v. Caine & Weiner*, 2024 WL 69089, at *3 (E.D.N.Y. Jan. 5, 2024)).) *Spitz* is distinguishable because it concerned a plaintiff's lack of standing to bring a claim under the Fair Debt Collection Practices Act—not the FCRA—where there was a failure to allege any dissemination of defamatory information or other conduct analogous to a common law tort. *Spitz v. Caine & Weiner*, 2024 WL 69089, at *3 (E.D.N.Y. Jan. 5, 2024).

> A. This is my character that your company that you're representing is coming after me, that came after me.

(Rodriguez Dep. 145:7–17.) Although Rodriguez did not identify delay as an injury in his deposition testimony, his testimony that Dealertrack "came after me" is illustrative of tangible emotional harm.

Thus, the record shows by a preponderance of the evidence that Rodriguez experienced intangible reputational harm as well as tangible emotional distress and the delayed submission of his application for financing related to the Mustang purchase, all of which are traceable to Dealertrack's publication of reports indicating that Rodriguez had failed OFAC screening as a match with a Specially Designated Foreign Narcotics Trafficker named Angel Rodriguez in Guadalajara. *Tandon*, 752 F.3d at 243 (the party asserting standing has the burden of doing so by a preponderance of evidence). Likewise, Rodriguez's substantial risk of future injury in the form of Dealertrack reports publishing inaccurate or misleading information about Rodriguez to another car dealership when Rodriguez purchases another car, is also traceable to Dealertrack's failure to take reasonable procedures to ensure Rodriguez's file contains only accurate information. The traceability requirements for an injury in fact supporting the reasonable procedures claims for damages and injunctive relief are therefore satisfied.

C. <u>Rodriguez's Past and Future Injuries are Redressable</u>

For Rodriguez to have standing to pursue the reasonable procedures claims, it must be "likely as opposed to merely speculative, that [his] injur[ies] will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. Dealertrack does not contest the redressability of Rodriguez's reasonable procedures claims made on behalf of himself and members of the putative Class. However, this Court must be assured that any damages, injunctive relief, and declaratory relief sought under Rodriguez's reasonable procedures claims would redress his injuries and those of

the putative Class members because "[p]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC*, 594 U.S. at 431.

Rodriguez brings reasonable procedures claims under the FCRA and NY FCRA on both an individual and Class basis. While he seeks only damages on behalf of himself and members of the putative Class on the FCRA reasonable procedures claims, he seeks damages *and* injunctive relief on behalf of himself and members of the putative Class on the NY FCRA reasonable procedures claims. (Compl. ¶¶ 99, 120.) Additionally, in the Prayer for Relief, Rodriguez generally seeks two forms of declaratory relief under the FCRA and NY FCRA without specifying which claims support such relief. Notwithstanding these nuances, neither Dealertrack nor Rodriguez addressed in their briefs whether Rodriguez has standing to pursue (1) the specific declaratory relief sought, (2) injunctive relief on behalf of himself, (3) injunctive relief on behalf of the putative Class, or (4) damages on a classwide basis. Rather, the parties' briefing appears only to address the record relating to Rodriguez's alleged past harms and claims for retrospective relief in the form of damages. (Def.'s MTD Mem; Opp'n.)

Rodriguez's asserted past reputational injuries, emotional distress, and experience of delayed clearance to apply for financing for the Mustang are redressable through damages. Specifically, through the FCRA reasonable procedures claims (Count I) and the corresponding NY FCRA claims (Count V), Rodriguez seeks "actual damages and/or statutory damages, [and] punitive damages," on behalf of himself and the proposed Class. (Compl. ¶¶ 99, 120.) As explained above, Rodriguez's past injuries are traceable to Dealertrack's alleged failure to follow reasonable procedures to assure maximum possible accuracy in publishing reports of OFAC search results about him, and "past injuries may provide a basis for standing to seek money damages . . . ." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). Here, Rodriguez

has standing to pursue damages because it is clear that "monetary relief may compensate Plaintiff for his losses or eliminate any effects caused by [Defendant] . . ." *Miller v. Syracuse Univ.*, 662 F. Supp. 3d 338, 354 (N.D.N.Y. 2023); *see also Bellino v. JPMorgan Chase Bank, N.A.*, 209 F. Supp. 3d 601, 604 n.5 (S.D.N.Y. 2016) ("[I]t is clear that [p]laintiff would be compensated for [his] injuries through the award of statutory damages.").

Furthermore, Rodriguez also has standing to pursue damages on behalf of the putative Class on the reasonable procedures claims under the FCRA and NY FCRA.

> A named plaintiff in a putative class action has 'class standing' to pursue claims on behalf of absent class members 'if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants.'

*Hines v. Equifax Info. Servs., LLC*, No. 19-cv-6701, 2022 WL 2841909, at *12 (E.D.N.Y. July 16, 2022), *report and recommendation adopted as modified*, No. 19-cv-6701, 2024 WL 4132333 (E.D.N.Y. Sept. 10, 2024). The Complaint defines the proposed Class as follows:

> All individuals who, in the five years predating the filing of this Complaint and continuing through the date the class list is prepared, were the subjects of consumer reports furnished by Dealertrack that contained public-record information in the "OFAC" section of the "Results" section of the reports where the name or date of birth or address of the subject of the report do not match the name or date of birth or address in the government database.

(Compl. ¶ 84.) Here, as explained, Rodriguez suffered reputational harm, emotional distress, and delayed submission of a financing application traceable to Dealertrack's publication of reports to Parkway employees indicating that he failed the OFAC screening as a match to a Specially Designated Narcotics Trafficker in Guadalajara. These injuries correspond to the alleged harms suffered by members of the putative Class who, by definition, were also the subject of Dealertrack OFAC reports containing inaccurate and defamatory information because "the name

or date of birth or address of the subject of the report do not match the name or date of birth or address in the government database." (*Id.*) Thus, Dealertrack's alleged conduct with respect to Rodriguez—its failure to take reasonable measures to ensure maximum possible accuracy of its OFAC screening results for him—implicates the same set of concerns as the conduct alleged to have injured members of the putative Class. Accordingly, Rodriguez has standing to pursue reasonable procedures claims for damages on behalf of the putative Class under the FCRA and NY FCRA. *See Hines*, 2022 WL 2841909, at *12 (holding that plaintiff had standing to pursue damages on behalf of absent class members because he sufficiently alleged an injury that was the same as that faced by class members).

Moreover, it is likely that injunctive relief would redress the substantial risk of future harm that Rodriguez faces in light of his intention to purchase another vehicle and the fact that Dealertrack is one of the "largest providers of credit information" to car dealerships across the United States. (Compl. ¶ 75.) The Complaint plausibly alleges that there is a substantial risk that Rodriguez may again be subject to inaccurate and misleading Dealertrack OFAC screening reports that identify him as failing OFAC screening as a match to a Specially Designated Narcotics Trafficker named Angel Rodriguez in Guadalajara. (Rodriguez Dep. 31:12–13; Compl. ¶ 75.) Accordingly, it is "likely as opposed to merely speculative," that injunctive relief requiring Dealertrack to take additional measures to ensure the accuracy of its records would redress such future harm. *Lujan*, 504 U.S. at 561.

However, with respect to Rodriguez's reasonable procedures claims under the NY FCRA, which seek injunctive relief on behalf of the putative Class, there is no indication that putative Class members face a substantial risk of future harm from Dealertrack's alleged failure to take reasonable procedures to ensure the maximum possible accuracy of its OFAC screening

reports. The definition of the proposed Class does not indicate that members intend to purchase vehicles in the future. (*See* Compl. ¶ 84.) Rather, the Class consists of individuals who "*were*" in the past "the subjects of consumer reports furnished by Dealertrack that contained public-record information in the "OFAC" section of the "Results" section of the reports where the name or date of birth or address of the report subject do not match the name or date of birth or address in the government database. (*Id*. (emphasis added).) Thus, the substantial risk of future harm faced by Rodriguez due to Dealertrack's failure to take reasonable procedures to ensure accurate OFAC screening reports does *not* correspond to any plausible future risk of harm faced by members of the putative Class.

Finally, the declaratory relief identified in the Complaint would not redress Rodriguez's substantial risk of future harm in the form of inaccurate and misleading Dealertrack OFAC screening reports. He seeks a declaration "that Dealertrack committed multiple, separate violations of the FCRA and NY FCRA" and "that Dealertrack acted negligently, knowingly, willfully, and in deliberate or reckless disregard of the rights of Plaintiff and the Class under the FCRA and NY FCRA." (Compl. at 30.)[10] Both of the requested declarations are backward-looking statements about Dealertrack's alleged past unlawful conduct and therefore would not address the risk of future harm that Rodriguez faces from Dealertrack's alleged failure to take reasonable procedures to ensure accurate OFAC screening reports. "[B]ecause declaratory relief

[10] Other than the Prayer for Relief on page 30, the sole provision of the Complaint addressing declaratory relief is paragraph 93, which also argues for certification of the proposed Class under Rule 23(b)(2), Fed. R. Civ. P., because "Dealertrack has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole." (Compl. ¶ 93.) However, the Complaint does not identify any specific declaratory relief sought other than the declaratory relief described in the Prayer for Relief. (*See id*. at 30.)

is intended to operate *prospectively*, courts have found no basis for declaratory relief where only past acts are involved." *Storms v. United States*, No. 13-cv-811, 2015 WL 1196592, at *21 (E.D.N.Y. Mar. 16, 2015) (emphasis added); *KM Enterprises, Inc. v. McDonald*, No. 11-cv-5098, 2012 WL 4472010, at *19 (E.D.N.Y. Sept. 25, 2012) ("The main barrier in a declaratory judgment action is that it cannot be used solely to adjudicate a defendant's past conduct."), *aff'd*, 518 F. App'x 12 (2d Cir. 2013). Thus, Rodriguez lacks standing to pursue the specific declaratory relief sought in the Complaint.

Thus, Rodriguez has standing to pursue reasonable procedures claims under the FCRA and NY FCRA seeking compensatory and punitive damages on behalf of himself and members of the putative Class. He also has standing to bring NY FCRA reasonable procedures claims seeking injunctive relief on his own behalf. However, Rodriguez lacks standing to pursue classwide injunctive relief through his NYCFRA reasonable procedures claims. Additionally, he also lacks standing to pursue any FCRA and NY FCRA claims for the specific declaratory relief sought in the Complaint.

## II. Rodriguez has Standing to Pursue the Failure-to-Disclose Claims

Rodriguez claims that Dealertrack violated the failure-to-disclose requirements of the FCRA and NY FCRA, "which require consumer reporting agencies to, upon a consumer's request, 'clearly and accurately disclose to the consumer . . . [a]ll information in the consumer's file at the time of the request.'" (Compl. ¶¶ 10, 15, 69, 70, 100–104.)

Dealertrack disputes that it "ignored" Rodriguez's requests for his file as alleged in the Complaint, but argues that "even if [it] did ignore Plaintiff's requests, that does not establish Article III standing because Plaintiff cannot point to any resulting injury." (Def.'s MTD Mem. at 19.) Dealertrack fails to show that it provided Rodriguez with his Dealertrack consumer file in

response to the November 2022 request. Moreover, its challenges to the Complaint's plausible allegations of injury are unpersuasive. The Complaint plausibly alleges that Dealertrack received Rodriguez's request for his consumer file, but did not provide the information sought, thereby depriving Rodriguez of information to which he is statutorily entitled. Moreover, that failure plausibly hampered Rodriguez's ability to correct the errors in Dealertrack's information as it prevented him from learning about the source of Dealertrack's errors and how widely its inaccurate and misleading reports about Rodriguez were disseminated. The record and Complaint thus support numerous injuries in fact that are traceable to Dealertrack's alleged failure to disclose and are redressable by the requested damages and attorney's fees under the FCRA and NY FCRA.

However, Rodriguez has not demonstrated that he faces a substantial risk of future harm from Dealertrack's failure to disclose. Thus, the Complaint does not plausibly allege facts supporting Rodriguez's standing to pursue injunctive relief through his NY FCRA failure-to-disclose claims.

A. Dealertrack's Alleged Failure to Disclose Rodriguez's Consumer File Caused Rodriguez Concrete Injuries in Fact That are Traceable to Dealertrack

In *TransUnion*, the Supreme Court explicitly recognized that an "informational injury," where a plaintiff alleges that he "failed to receive . . . information" to which he is legally entitled, is sufficiently concrete to confer standing. 594 U.S. at 441; *see also Spokeo*, 578 U.S. at 340–42. It found that the plaintiffs in that case failed to demonstrate standing to pursue damages for violations of the FCRA's failure-to-disclose obligations because they alleged only that the mailings provided by TransUnion in response to requests for their complete credit files were formatted incorrectly—not that TransUnion failed to provide the requested information. *TransUnion*, 594 U.S. at 440. Thus, the intangible informational injury alleged "did not bear a

close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id*. Moreover, the Supreme Court found that the plaintiffs failed to "demonstrate that they suffered any harm *at all* from the formatting violations," such as by showing that they "were confused, distressed, or relied on the information in any way." *Id*. In that context, it held that the failure-to-disclose claims constituted "bare procedural violation[s] divorced from any concrete harm." *Id*.

The Third Circuit has applied *TransUnion* in an action raising FCRA failure-to-disclose claims. *Kelly v. RealPage Inc.*, 47 F.4th 202, 212 (3d Cir. 2022). Relying on *TransUnion*, *Spokeo*, and earlier Supreme Court cases in the context of public-disclosure laws, it held that "a plaintiff suffers an injury in fact when she fails to obtain information which must be publicly disclosed pursuant to a statute, and that an informational injury is sufficiently concrete where the failure to disclose is directly related to the purpose of the statute." *Id*. (citing *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20–25 (1998); *Public Citizen v. Department of Justice*, 491 U.S. 440, 449 (1989)). It further reasoned that in *Spokeo*, the Supreme Court cited *Public Citizen* and *Akin* with approval, explaining that "a plaintiff 'need not allege any additional harm beyond the one Congress has identified' in enacting the statute . . . ." *Id*. The Third Circuit reasoned that in *TransUnion*, the Supreme Court's rejection of the asserted informational injury "did not amend the informational injury doctrine," but rather "applied its prior precedent and determined that two crucial requirements for establishing an informational injury were lacking: (1) the denial of information and (2) some consequence caused by that omission." *Id*. at 213. Thus, the Third Circuit held that under *TransUnion*, "to state a cognizable informational injury a plaintiff must allege that they failed to receive . . . required information and that the omission led to adverse

effects or other downstream consequences, and such consequences have a nexus to the interest Congress sought to protect." *Id.* at 214.

Here, under the plain terms of *TransUnion*, the Complaint plausibly alleges a concrete informational injury. First, Rodriguez has a clear statutory entitlement to his Dealertrack file. The FCRA is clear: all companies subject to the law shall "clearly and accurately disclose" all information in the consumer's file upon request. 15 U.S.C. § 1681g(a). The statute specifically sought to address the problem of a consumer's "lack of access to the information in her file and the difficulty in correcting inaccurate information." *Kelly*, 47 F.4th at 206. "Congress also gave consumers a powerful remedy to enforce their rights by creating private causes of action, for both willful and negligent violations of the FCRA, including statutory damages and attorney's fees." *Id.* Thus, courts have found that the FCRA creates a "substantive entitlement" to the disclosure of source information. *Id.* at 214.

Second, the Complaint plausibly alleges that Dealertrack failed to provide Rodriguez his consumer file after he requested these records. Rodriguez's sworn responses to interrogatories provide that "[i]n November 2022, Mr. Rodriguez sent a letter via Certified U.S. Mail to Dealertrack, requesting from Dealertrack all information in his consumer file. USPS Tracking No. 70200640000193203658's records indicate the letter was delivered on November 28, 2022." (Ex. M at 17.) According to the Complaint, "Dealertrack ignored Mr. Rodriguez's request for this critical information." (Compl. ¶ 10.) Dealertrack contests this allegation in its brief, but fails to point to any evidence in the record showing that it actually provided Rodriguez his consumer file. (Def.'s MTD Mem. at 19; Ex. M at 17.)

Third, the Complaint plausibly alleges that Rodriguez suffered numerous adverse effects and downstream consequences due to Dealertrack's failure to disclose his consumer file to him.

As a result of this failure, Rodriguez was deprived of his Dealertrack records, which plausibly "deprived him of knowledge regarding (i) the source from which Dealertrack obtained information indicating, inaccurately, that Mr. Rodriguez was on the OFAC List; and (ii) the identities of any other persons or companies to whom, in addition to Parkway Ford, Dealertrack disseminated the inaccurate and misleading information identifying Mr. Rodriguez as a match to the List." (Compl. ¶ 73.) Accordingly, Rodriguez experienced "frustration, distress, embarrassment, and damage to his reputation" and "concern[] that the inaccurate and misleading reporting could reoccur." (Compl. ¶¶ 15, 69, 70, 100–104.) These allegations amply plead numerous adverse effects and downstream harms from Dealertrack's failure to disclose to Rodriguez his consumer file. *See Kelly*, 47 F.4th at 214 (finding adverse effects when "[t]here were errors in [plaintiff's] files" and defendant's failure to disclose deprived plaintiff of the ability to "obtain the information . . . needed to cure. . . and ultimately resolve those issues").

Fourth, Rodriguez also sufficiently alleged a nexus between these adverse effects and a vital interest that Congress sought to protect through the FCRA. The FCRA was enacted to remedy consumers' "lack of access to the information in [their] file[s] and the difficulty in correcting inaccurate information." *Kelly*, 47 F.4th at 206; *Spokeo*, 578 U.S. at 342 ("Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk."). Thus, the Complaint plausibly alleges that Dealertrack's failure to disclose Rodriguez's file impaired his ability to identify and correct the inaccurate information that led to multiple inaccurate and misleading reports to Parkway that he had failed OFAC screening as a match to a Specially Designated Narcotics Trafficker in Guadalajara.

The alleged injuries flowing from Dealertrack's failure to disclose are not only concrete, but are also "particular" and "actual" as required to constitute injuries in fact. The injuries are

"particular" because Dealertrack failed to produce information and records concerning Rodriguez to him. *See Soule*, 90 F.4th at 46. They are also "actual" because the failure to disclose already occurred. *Id*.

Moreover, there is no question that Rodriguez's informational injuries stemming from lack of access to his Dealertrack consumer file are directly traceable to Dealertrack's alleged failure to provide him these records in response to his requests. (Ex. M at 17; Compl. ¶ 15.)

Dealertrack attempts to attack Rodriguez's standing on the failure-to-disclose claims by contending that he "cannot point to any resulting injury" because he was able to purchase the Mustang. (Def.'s MTD Mem. at 19.) This argument ignores the factual allegations of the Complaint and the standards recognized in *TransUnion*. The Complaint plausibly alleges that Rodriguez sought access to his Dealertrack file after he purchased the Mustang in order to isolate the errors or misinformation that had led Dealertrack to produce multiple reports that inaccurately and misleadingly state that he failed OFAC screening as a match to a Specially Designated Narcotics Trafficker named Angel Rodriguez in Guadalajara. Moreover, it also plausibly alleges that Rodriguez sought to use his consumer file to identify inaccurate source information, determine how widely inaccurate and misleading information had been disseminated, and to correct the errors in light of Rodriguez's intention to purchase another vehicle and the widespread use of Dealertrack to conduct checks for car dealerships. (Compl. ¶¶ 6, 12, 73, 75.) Regardless of his ability to purchase the Mustang, the Complaint sufficiently alleges that Rodriguez "was denied information to which [he] was legally entitled, and that the denial caused some adverse consequences related to the purpose of the" FCRA. *Kelly*, 47 F.4th at 212. Thus, the Complaint alleges an informational injury in fact that is directly traceable to Dealertrack's failure to disclose Rodriguez's consumer file in response to his inquiries.

B. Rodriguez's Informational Injury is Redressable Through Damages and Attorney's Fees

As explained, Rodriguez must demonstrate that his informational injury is "likely" to be redressed because "[p]laintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek." *TransUnion LLC*, 594 U.S. at 431; *Lujan*, 504 U.S. at 561.

Rodriguez brings the failure-to-disclose claims under FCRA and NY FCRA only on an individual basis. (Compl. ¶¶ 100–104; 121–125.) While he seeks only damages on the FCRA failure-to-disclose claims, he seeks damages *and* injunctive relief on the corresponding NY FCRA claims. (Compl. ¶¶ 104, 125.) Although Rodriguez has standing for damages under both the FCRA and NY FCRA, he has not demonstrated standing for injunctive relief under the NY FCRA.

First, Rodriguez's past informational injury is redressable through the "actual damages and/or statutory damages, punitive damages, costs and attorneys' fees . . . ." sought in the Complaint for the FCRA failure-to-disclose claims (Count II) and the corresponding NY FCRA claims (Count VI). Compl. ¶¶ 104, 125; *Nicosia*, 834 F.3d at 239; *Bellino*, 209 F. Supp. 3d at 604. Because Rodriguez's informational injury is traceable to Dealertrack's alleged failure to disclose his consumer file, damages would provide redress. Moreover, FCRA Section 1681g(a) and NY FCRA Section 380-d permit a plaintiff to seek attorney's fees and costs to compensate those who demonstrate a violation of their rights, and such relief would therefore redress expenses incurred in pursuing successful claims. 15 U.S.C. § 1681n(a); N.Y. Gen. Bus. Law § 380-I.

Neither party addresses the standards governing standing to pursue injunctive relief in their briefing. The Complaint does not plausibly allege that Rodriguez faces a substantial risk of future harm from Dealertrack's failure to disclose as required for standing to seek injunctive

relief under the NY FCRA. Here, the Complaint does not allege that Rodriguez has any outstanding requests to Dealertrack for his file or even that he intends to submit a request in the future such that he faces a certainly impending harm or substantial risk of future injury from Dealertrack's failure to disclose. While the Complaint alleges that Rodriguez generally "fears that Dealertrack's inaccurate and misleading reporting could occur again in the future" because he "intends to purchase another vehicle," these allegations fail to plausibly allege an ongoing or certainly impending injury, much less a substantial risk of future harm. (Compl. ¶ 75.) Rather, it is "merely speculative" that Rodriguez will again request his consumer file from Dealertrack and that Dealertrack will fail to disclose it. *Lujan*, 504 U.S. at 561. Thus, here, as in *Dorce*, Rodriguez's NY FCRA failure-to-disclose claims for injunctive relief must be dismissed for lack of standing. 2 F.4th. at 88 (affirming dismissal of injunctive relief claims due to plaintiffs' failure to allege "threatened injury [that] is certainly impending, or [that] there is a substantial risk that the harm will occur" (citing *Susan B. Anthony List*, 573 U.S. at 158)).

Accordingly, Rodriguez has standing to pursue failure-to-disclose claims under the FCRA and NY FCRA for damages, but lacks standing to bring NY FCRA failure-to-disclose claims for injunctive relief.

## III. Rodriguez has Standing to Pursue the Reinvestigation Claims

Rodriguez claims that Dealertrack failed to conduct a reasonable reinvestigation of its records relating to him to determine whether the information it reported was accurate, and to correct inaccurate and misleading information in violation of Section 1681i. (Compl. ¶¶ 13, 106.) He also brings an analogous NY FCRA claim alleging the failure to conduct a reasonable reinvestigation of his records. (*Id.* ¶ 127.) With respect to these claims, the Complaint adequately alleges that Rodriguez suffered an injury in fact in the form of concrete and informational harms,

that such harms are traceable to Dealertrack's alleged failures, and that the requested relief would redress these injuries. Thus, Rodriguez has standing to pursue damages on the FCRA and NY FCRA reinvestigation claims. However, he lacks standing to seek injunctive relief under the NY FCRA claims because the Complaint fails to allege any substantial risk of future harm.

A. Dealertrack's Failure to Reinvestigate Caused Rodriguez an Injury in Fact

FCRA Section 1681i(a) establishes that:

> [I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30–day period beginning on the date on which the agency receives the notice of the dispute from the consumer.

15 U.S.C. § 1681i(a)(1)(A).

The FCRA thus clearly requires that, when an individual disputes the information in their file, "the agency shall, free of charge, conduct a reasonable reinvestigation." 15 U.S.C. §§ 1681i(a). It even contains a private right of action when a party "willfully fails to comply with any requirement" of the FCRA "with respect to any consumer." 15 U.S.C. § 1681n(a). For example, "[t]hese sections confer upon Plaintiff a statutory entitlement to a reasonable reinvestigation once she disputes an item on her credit report." *Jones v. Experian Info. Sols., Inc.*, 982 F. Supp. 2d 268, 272 (S.D.N.Y. 2013).

Rodriguez's sworn response to interrogatories provides that "[i]n November 2022, Mr. Rodriguez disputed the contents of his Parkway Ford-related report with Dealertrack by sending a letter via Certified U.S. Mail identifying the inaccurate record and requesting that Dealertrack correct the report. USPS Tracking No. 70200640000193203689's records indicate the letter was delivered on December 1, 2022." (Ex. M at 17.) The Complaint alleges that:

> Dealertrack ignored Mr. Rodriguez and never responded to him . . . Moreover, Dealertrack has refused to correct the inaccurate and misleading information in its own report . . . .

(Compl. ¶¶ 68–74.) With respect to past injury, the Complaint further alleges "that such reporting has *already been issued* to other entities, and that other entities might report the same information." (Compl. ¶ 75 (emphasis added).) Regarding the risk of future injury, the Complaint alleges that Rodriguez "fears that Dealertrack's inaccurate and misleading reporting could occur again in the future" because "Dealertrack is one of the largest providers of credit information to auto dealerships in the country, and Mr. Rodriguez intends to purchase another vehicle in the future." (*Id.*)

Based on these facts and allegations, the Complaint plausibly alleges that Dealertrack's "failure to fulfill its statutory obligations with respect to" Rodriguez injured him because he "did not get the benefit of the reasonable reinvestigation into the accuracy of" his Dealertrack OFAC report to which he "was statutorily entitled." *Jones*, 982 F. Supp. 2d at 272. Furthermore, the Complaint plausibly alleges that Rodriguez has already suffered adverse consequences from Dealertrack's failure to conduct a reasonable reinvestigation because the information underlying the inaccurate and misleading Dealertrack OFAC screening reports for Rodriguez "has *already been issued* to other entities," raising a plausible and substantial risk "that other entities might report the same information." (Compl. ¶¶ 68, 71–74 (emphasis added).)

Rodriguez's past injuries are sufficiently "particular" because Dealertrack failed to reinvestigate Rodriguez's own account, and "actual" because they have allegedly already transpired. *Soule*, 90 F.4th at 46. Traceability, which Dealertrack does not contest, is also satisfied because Dealertrack—and no other entity—allegedly failed to conduct the reasonable

reinvestigation required by the FCRA and NY FCRA in response to Rodriguez's request or to send Rodriguez the results of any such reinvestigation. (Ex. M at 17.)

Dealertrack's sole contention with respect to the failure to reinvestigate claims is that "[t]here is no actual evidence of 'any such post-dispute disclosure,' so [Rodriguez] cannot establish that he was injured as a result of Dealertrack's alleged failure to disclose or failure to reinvestigate his file." (Def.'s MTD Mem. at 19.) Through this conclusory statement, Dealertrack implies that its failure to reinvestigate caused no injury. However, as explained above, the Complaint plausibly alleges that Dealertrack neglected its statutory duty under the FCRA to conduct a reasonable reinvestigation into Rodriguez's records to identify and correct any inaccurate information and that this failure harmed Rodriguez by causing the past dissemination and continued use of inaccurate information about him. These allegations satisfy the requirements for pleading an injury that is concrete, particular, and actual.

Dealertrack relies on *Fashakin v. Nextel Commc'ns*, 2009 WL 790350, at *12 (E.D.N.Y. Mar. 25, 2009), for the assertion that "there is no evidence of any. . . adverse consequences stemming from Dealertrack's alleged disregard of [Rodriguez's] dispute letter." (Def.s' MTD Mem. at 19.) *Fashakin* is distinguishable. There, the plaintiff failed to demonstrate that the disseminated debt records, regarding which he had sought a reinvestigation, were inaccurate. *Fashakin*, 2009 WL 790350, at *12. By contrast, here Rodriguez sought reinvestigation of the information underlying Dealertrack's inaccurate and misleading OFAC screening reports about him, which indicated that he had failed OFAC screening as a match to a Specially Designated Narcotics Trafficker in Guadalajara named Angel Rodriguez. (Ex. at A, DT 00100.)

However, the Complaint does not allege any ongoing or certainly impending harm or a substantial risk of future harm that would support Rodriguez's request for injunctive relief for its

failure to reinvestigate claims under the NY FCRA. As noted, Rodriguez intends to purchase another car and Dealertrack is widely used by car dealerships. (Compl. ¶ 75.) The Complaint alleges that Dealertrack's failure to conduct a reasonable reinvestigation of Rodriguez's records after receiving his November 2022 letter disputing the contents of his Parkway report has ongoing effects in that Dealertrack continues to use, and may have disseminated to others, inaccurate information associating Rodriguez with a Specially Designated Narcotics Trafficker in Guadalajara named Angel Rodriguez. (*Id*; Ex. at A, DT 00100.) Although it is plausible that Dealertrack's past failure to reinvestigate is continuing to have adverse effects on Rodriguez, such ongoing impacts from a past failure do not support standing for injunctive relief. *See Dorce*, 2 F.4th at 95 (Where a "plaintiff[ ] seek[s] injunctive or declaratory relief, they cannot rely on past injury to satisfy the injury requirement but must show a likelihood that they will be injured in the future."). The Complaint does not allege that Rodriguez intends to seek reinvestigation of his Dealertrack records in the future or that any such future requests would be futile. Thus, it fails to allege any ongoing or certainly impending harm, or even any substantial risk of future harm, as required for standing to pursue injunctive relief on the NY FCRA failure to reinvestigate claim.

B. <u>Rodriguez's Past Injuries from Dealertrack's Failure to Reinvestigate his Records are Redressable</u>

Rodriguez seeks "actual damages and/or statutory damages, punitive damages, costs, and attorneys' fees" for his FCRA failure to reinvestigate claims (Counts III). (Compl. ¶¶ 109, 130.) With respect to the NY FCRA claims (Count VII), he seeks the same relief as well as injunctive relief. (Compl. ¶ 130.)

Because Rodriguez's injuries from Dealertrack's failure to identify and correct inaccurate and misleading information in its records about Rodriguez are traceable to the company's failure

to reinvestigate, damages would redress his injuries. *Bellino*, 209 F. Supp. 3d at 604 n.5; *Nicosia*, 834 F.3d at 239. Thus, Rodriguez has Article III standing to pursue damages through its claims against Dealertrack under FCRA Sections 1681g(a) and NY FCRA Section 380-d.

However, as explained above, because the Complaint does not allege any harm that is ongoing or certainly impending, or any substantial risk of future harm with respect to Dealertrack's alleged failure to reinvestigate, Rodriguez lacks standing to pursue injunctive relief on the failure to reinvestigate claims under the NY FCRA.

**IV. Rodriguez Lacks Standing to Pursue the Reinvestigation Notice Claim**

In his fourth claim, Rodriguez alleges that "Dealertrack violated 15 U.S.C. § 1681i(a)(6)(A) by failing to provide written notice to Plaintiff of the results of the reinvestigation within five business days." (Compl. ¶ 111.) However, Rodriguez fails to allege any injury stemming from Dealertrack's failure to provide notice of a reinvestigation. *See Soule*, 90 F.4th at 45 (explaining that injuries must be (1) concrete, (2) particularized, and (3) actual or imminent.) The Complaint alleges only that

> in November 2022, Mr. Rodriguez disputed the contents of his Parkway Ford related report with Dealertrack by sending a letter via Certified U.S. Mail identifying the inaccurate record and requesting that Dealertrack correct the report. Again, Dealertrack ignored Mr. Rodriguez and never responded to him.

(Compl. ¶¶ 71–72.)

While Rodriguez expresses fears of a reoccurrence of the misleading and inaccurate Dealertrack OFAC reports, the Complaint does not allege that Dealertrack's failure to provide written notice of a reinvestigation contributes specifically to any such concerns. (*See* Compl. ¶¶ 73–75.) Rather, the thrust of the Complaint's allegations are that Dealertrack's alleged failure to disclose Rodriguez's file and to reinvestigate and correct inaccuracies in Rodriguez's records contributes to Dealertrack's alleged maintenance and dissemination of inaccurate and misleading

information identifying Rodriguez as having failed OFAC screening as a match to a Specially Designated Foreign Narcotics Trafficker in Guadalajara. (Compl. ¶¶ 69–78.)

Rodriguez cites one case, *Adan v. Insight Investigation, Inc.*, where a court found standing for an FCRA claim challenging a failure to provide written notice of reinvestigation, but that case is factually distinguishable. (Opp'n at 13 (citing No. 16-cv-2807, 2018 WL 467897, at *6 (S.D. Cal. Jan. 18, 2018).) Unlike the instant case, in *Adan*, the plaintiff sufficiently alleged injury in the form of wasted money, time, and emotional distress from defendant's failure to provide notice of reinvestigation by alleging that he would have ceased taking specific actions if he had notice of defendant's investigation. *Adan*, 2018 WL 467897, at *6. Here, the Complaint is bereft of any allegations that Rodriguez suffered any injury on account of Dealertrack's alleged failure to notify him that it has taken reinvestigation measures. Accordingly, Rodriguez lacks standing to pursue FCRA claims against Dealertrack's alleged failure to afford him written notice of any reinvestigation efforts.

**CONCLUSION**

For the reasons set forth above, Dealertrack's Motion to Dismiss is granted in part and denied in part as follows. Rodriguez has Article III standing to pursue the following claims: (1) reasonable procedures claims on behalf of himself and the putative Class for damages under the FCRA and NY FCRA; (2) reasonable procedures claims under the NY FCRA for injunctive relief on his own behalf; (3) failure-to-disclose claims for damages under the FCRA and NY FCRA; and (4) reinvestigation claims for damages under the FCRA and NY FCRA. However, Rodriguez lacks standing to bring: 1) the declaratory relief claims set forth in the Complaint; (2) reasonable procedures claims for injunctive relief on behalf of the proposed Class under the NY FCRA; (3) failure-to-disclose claims for injunctive relief under the NY FCRA; (4)

reinvestigation claims for injunctive relief under the NY FCRA; and (5) the reinvestigation notice claims under the FCRA.

Dated: Central Islip, New York
September 10, 2026

*/s/ Nusrat J. Choudhury*
NUSRAT J. CHOUDHURY
United States District Judge